EMMA F. SHELDON, Appellee, v. L. B. THORNBURG, as administrator of the Estate of ELIZABETH E. WARREN, Appellant.

**Evidence:** TRANSACTIONS WITH A DECEDENT: CONTRACTS.  One seeking to enforce a claim against an estate can not testify to any conversation or transaction with the decedent regarding the same: Thus plaintiff, after being called to her sister's home, was incompetent to testify that she had a conversation or understanding

with her sister regarding her care and plaintiff's compensation; for, although no attempt was made to repeat the words employed, the mere statement that there was such a conversation or understanding related to a personal transaction within the meaning of the statute, which includes anything said or done in which both the witness and decedent took part, and which decedent, if living, would have the right to deny or affirm.

**Same.** A witness who is disqualified under the statute from testifying directly to a contract or understanding with a decedent can not testify to a state of facts relied upon to support an implied agreement.

**Same.** In seeking to recover a claim against an estate, evidence that a demand therefor was made against the surviving husband or wife is immaterial, although made in the presence of decedent; and in this case it was prejudicial.

**Same.** In the instant case plaintiff's deceased sister requested her by letter to come and care for her and expressed a willingness to pay her expenses, and it is held that the court should have told the jury that the letter could not be considered as evidence that decedent intended to pay plaintiff any compensation for her services, other than her expenses.

**Personal services:** COMPENSATION. While the service and care rendered by one sister at the sick bed of another may ordinarily be presumed to be gratuitous, still it may be of such character and duration as to exclude the idea of gratuity and warrant a finding that there was to be compensation. In this case refusal to instruct that the service was gratuitous was proper.

**Estates of decedents:** CLAIMS: BURDEN OF PROOF. An administrator pleading payment of claims filed against the estate has the burden of proof on that issue.

*Appeal from Dallas District Court.*—HON. J. H. APPLE-GATE, Judge.

THURSDAY, JANUARY 11, 1912.

PROCEEDINGS for the establishment of a claim made by plaintiff against the estate of Elizabeth E. Warren. Verdict for plaintiff, and defendant appeals. The material facts will be found sufficiently stated in the opinion.—*Reversed.*

*H. A. Hoyt* and *H. G. Giddings,* for appellant.

*D. H. Miller,* for appellee.

WEAVER, J.—The plaintiff is a sister of the deceased, Mrs. Warren. In December, 1909, Mrs. Warren being ill, plaintiff came to her sister's house, and cared for her, or assisted in caring for her until her death in July, 1910. Thereafter an administrator having been appointed for the estate of the deceased, plaintiff filed a claim for the services so rendered itemizing the same as thirty weeks labor in housekeeping and nursing at $25 per week, making an aggregate of $750. She also presented and filed another claim upon two promissory notes signed by the deceased, with her husband, W. E. Warren, aggregating the further sum of $112. Allowance of these claims was refused by the administrator, and the issue was tried to a jury, resulting in a verdict for plaintiff for $700. The evidence tends to show that for many years plaintiff had frequently visited in her sister's home; such visits on one or more occasions extending over a period of several months. During such visits she was treated as a visitor or member of the family, and assisted in and about the housework, paying no board and receiving no compensation for her services. On December 21, 1909, plaintiff then being in Keokuk, Iowa, her usual place of residence, received from Mrs. Warren a letter reading as follows: "Perry, Iowa, December 21. Dear Sister: I am very sick. Will you come? I will pay your expenses. Do not delay. [Signed] Lib." It was in response to this summons that plaintiff went to Mrs. Warren's home and entered upon the service for which she claims payment. This general statement is suffiient to indicate the point and bearing of the several assignments of error upon which a new trial is sought by the appellant.

I.   The plaintiff was a witness in her own behalf, and, after stating that her sister and sister's husband and herself

were the only persons living in the house during the period of her alleged services, she was permitted,

1 EVIDENCE: transactions with a decedent: contracts.

over defendant's objection, to testify as follows: "Q. I will ask you, Mrs. Sheldon, whether while you were there you had any conversation with Mrs. Warren about the services you were rendering in her home at that time, and about any compensation that you would receive for it? Mr. Giddings: Defendant objects as incompetent and the witness incompetent to testify. Court: I will let her answer it by yes or no. A. Yes, sir, we had an understanding. We had a talk regarding it. Mr. Giddings: Defendant asks to strike the answer of the witness from the record for the reasons urged in the objection. Court: I will let her answer stand as to that. (Exception saved.) Q. You may state, Mrs. Sheldon, what, if any, services Mr. Warren rendered there while you were about the house in caring for Mrs. Warren or otherwise. Mr. Giddings: The same objection, and because they can not by process of elimination get at an incompetent fact by an incompetent witness. (Overruled, exception saved.) A. Mr. Warren did nothing in regard to the taking care of Mrs. Warren. The Court: Just what he did if anything. (Exception saved.) Q. Leaving out what you did? A. He did occasionally bring in some wood to put in the stove, and he would take up the ashes and carry them out. He would often take the slop pail and carry it away and empty it. I don't know of his doing anything else. Q. What else, if anything, did he do in the way of administering medicines to her? (The same objection. Overruled. Exception saved.) A. Nothing." Again she was permitted to testify that during Mrs. Warren's sickness and in her presence and hearing she, plaintiff, had some words with Mrs. Warren's husband, in which she told him to pay what he owed her, and she would go home; and that to his inquiry how much he owed her she responded, "Twenty-five dollars a week." To the admission

of the evidence to which we have referred proper exceptions were preserved.

We are quite clear that the testimony first quoted was erroneously admitted. As claimant against the estate of the deceased, plaintiff was not a competent witness concerning any conversation or personal transaction between herself and her sister, yet she was allowed to tell the jury that, after coming to the Warren home in response to the letter above mentioned, she had a conversation or understanding with deceased concerning the service she was rendering there, and the compensation she was to receive for it. If this did not amount to a conversation or transaction, it will not be easy to find its proper classification. True, she did not undertake to repeat the words employed, but she did that which may have been much more prejudicial to the defendant— she put her own construction on the unrevealed words and that, too, without fear of cross-examination, for defendant could not cross-examine concerning what was said between the sisters without surrendering his right to insist upon the incompetency of the witness to testify on that subject.

A witness may not testify indirectly to that of which he is incompetent to testify directly. *Watters v. McGreavy,* 111 Iowa, 538. While the word "transaction," as used in the statute, may not, perhaps, be open to any all-embracing definition universally applicable to all cases, it is perhaps sufficient for present purposes to say that anything said or done between the witness and deceased or any act or communication in which they both had any part, and of which both had knowledge and concerning which the deceased, if living, could speak in corroboration or denial of the statements of the living witness, is a "transaction" within the purpose and intent of the law, and the surviving witness, if disqualified by interest, is incompetent to testify concerning it against the administrator of such deceased person. *Dysart v. Furrow,* 90 Iowa, 59; *Kroh v. Hains,* 48 Neb.

691, (67 N. W. 771); *Kauffman v. Baillie,* 46 Wash. 248, (89 Pac. 548); *Owens v. Owens,* 14 W. Va. 88.

Accepting this as the intended effect of the statute, we see no way to escape the conclusion that, if plaintiff had an understanding or agreement with the deceased upon the subject of compensation for services rendered by the former, it must be said to be a transaction of which she may not testify in her own behalf. It was a very material factor in making her case for the jury. The fact of such agreement being shown, even though its terms were not disclosed, it was an easy matter for the jury to supply this defect by presuming that the parties intended plaintiff to have at least the reasonable value of her labor. The prejudicial character of the evidence is emphasized by the fact that, except as shown by the plaintiff herself, the record is wholly devoid of testimony tending to show that the matter of her services and compensation therefor was ever mentioned, or made the subject of conversation between her and the deceased.

Equally objectionable is the testimony which plaintiff was permitted to give as to the nature, kind, and extent of her services to her sister. There being no competent evidence of a contract, she could recover only upon a showing of facts raising an implied promise to pay. Ordinarily, as between living parties not standing in such relation to each other as to suggest the gratuitous character of the services, the implication of a promise to pay may be found from the simple fact that one of them does actually engage in the service of the other. If, however, the person receiving the benefit of such services dies, and claim is made against his estate to recover therefor upon an implied promise, the claimant is no more competent to testify to the facts relied upon to support such implication than he would be to testify to an express contract for such payment. *Peck v. McKean,* 45 Iowa, 19; *Smith v. Johnson,* 45 Iowa, 308; *Herring v. Herring,* 94

2 SAME.

Iowa, 56; *Ballinger v. Connable,* 100 Iowa, 130. This well-established rule would have excluded the plaintiff's testimony as to the services rendered by her, and its admission was error.

Nor can we quite understand on what principle it was thought admissible to show plaintiff's demand upon the husband of the deceased for payment for her labor. No claim is here being made against him, and

3 SAME.

his express or implied admission of obligation on that account has no bearing upon the merits of the claim against the estate of the deceased. The fact that such demand was heard by the wife would seem to be immaterial. That plaintiff was demanding or expecting payment from the husband is not evidence of any expectation of payment from the wife. Indeed, the jury might readily infer from plaintiff's statement to the husband that he was owing her $25 per week as equivalent to testimony that such was the compensation agreed upon between herself and sister.

II. The defendant requested an instruction that the letter written by deceased to plaintiff, and to which reference has already been made, would not warrant the jury in finding that deceased expected or intended to pay

4 SAME.

plaintiff anything more than the expenses incurred by her in complying with the request to come. This request was refused, and in its charge to the jury no reference was made to the letter, except as it was mentioned in the list of circumstances which could properly be considered upon the question whether the services of the plaintiff were rendered gratuitously. We think the jury should have been told that the only promise or agreement contained in such letter was to pay plaintiff's expenses, and that from such writing alone no other promise or expectation could be inferred.

III. It is contended that the plaintiff was in the home of her sister as a visitor or member of the family

for the time being, and, in the absence of an express con-
tract to pay for her services, the jury should
have been told she could not recover. We
are of the opinion, however, that the trial
court was right in refusing to so instruct as a matter of
law and leaving the question of the relation in which plain-
tiff stood to the Warren family, whether as a member there-
of or a visitor or employee therein to the finding of the
jury.

5 PERSONAL SERV-
ICES: compen-
sation.

It is true that the attendance by one sister at the
sick bed of another, and the rendition of such aid as may
naturally and properly be prompted by sisterly affection
and solicitude may ordinarily be presumed to be gra-
tuitous, but the service rendered may also be of such char-
acter and extent and performed under such circumstances
as to exclude the idea of gratuity, and justify a finding
that compensation therefor was contemplated by both par-
ties. The evidence in this respect was not so clear or de-
cisive as to make the question one for the court.

IV. Some complaint is also made of the instruction
given concerning the claim made on the two promissory
notes, but we discover nothing therein to which just excep-
tion may be taken. The defendant asserted
that the notes had been paid and offered
evidence to that effect. The jury were
charged that the burden was upon him to establish the al-
leged payment by a preponderance of the evidence. In this
there was no error. *Murphy v. McCarthy,* 108 Iowa, 38;
*University v. Summers,* 108 Iowa, 500, Code, section 3340.

6 ESTATES OF
DECEDENTS:
claims: bur-
den of proof.

Other exceptions by the appellant relate to matters not
likely to arise on a retrial, and we shall take no time for
their discussion. The cause must be remanded for a new
trial.—*Reversed.*