## Fish v. Welch's Administrator.

(Decided January 20, 1914.)

### Appeal from Madison Circuit Court.

1. Personal Representatives—Action Against for Money Loaned Decedent—Evidence.—In an action against the estate of a decedent for money alleged to have been loaned, and of which loan there was no evidence in writing, the fact that the decedent was a man of wealth, that he lived severdal months after the

alleged loan, that at the time of the alleged loan and during the preceding and succeeding months he at all times had on deposit large sums of money and purchase money notes upon which he could have readily realized, and other such circumstances were competent evidence on the issue whether the loan was actually made.

2. Personal Representatives—Assessment of Property in Hands of—Evidence.—Where none of the money, part of which plaintiff claimed to have had for several years, had ever been taxed, and subsequent to the institution of this action a proceeding was had in the County Court, and there was in that proceeding an agreed judgment assessing the money, it was not improper for the attorney of defendant to argue to the jury that the proceeding had been prepared and that the judgment therein entered for the purpose of using it as evidence in this case.

3. Personal Representatives—Action Against—Estates—Evidence.—The Court properly declined to permit appellant to testify as against the decedent that she had a given amount of money in gold at the time of the loan, and properly refused to permit her to testify what Welch wanted with the money.

J. A. SULLIVAN, S. M. WALLACE for appellant.

BURNAM & BURNAM for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is an action by appellant against the administrator of S. E. Welch, deceased, wherein she alleges that in December, 1909, she loaned to said Welch, $1,000 in gold, which had never been repaid. The answer of the administrator is merely a traverse of the material allegations of the petition.

On this single issue the case went to trial, and the jury found for the defendant, and the plaintiff appeals. Four grounds of reversal are relied upon:

(1) That the verdict is against the weight of the evidence, and is unsupported by any evidence.

(2) Because of the alleged misconduct of appellee's counsel by his reference to a certain judgment of the county court offered in evidence.

(3) Because the court refused to permit appellant to give certain testimony.

(4) Because of incompetent evidence admitted for the defendant, and competent evidence excluded for the plaintiff.

The plaintiff's claim rests almost exclusively upon the testimony of her daughter, Addie Fish, which is in substance that she and her mother lived together at Berea,

in Madison County, and that it had been their custom for a number of years—the exact number not stated—when they got hold of a gold piece to put it in a little bag which they kept on special deposit at the Madison National Bank in Richmond; that she and her mother each had access to this bag, and sometimes one and sometimes the other would go to the bank and put the gold piece in, and then have the bag returned to the vault; that in December, 1909, her mother went to the bank and brought that bag of gold home with her, and that it then amounted to $1,713; that a short time thereafter Welch came to her mother's home one night, and in her presence her mother counted out to him $1,000 in gold, which he wrapped up in a handkerchief and put in his pocket, remarking at the time that he would pay it back in a few days; that at the time her mother and Welch were on intimate terms, and Welch was frequently at their house, but that she, the witness, did not at the time speak to Welch, although her mother called her into the room for the purpose of witnessing the loan; that no evidence of the loan in writing was taken whatever. She could give no idea of how many years she and her mother had been accumulating the gold coins, or how much had been accumulated in any one year; that at the time of the loan her mother was not in business, and had not been for about three years; that her mother during that period had property which she rented out, and from which she received an income of between $20 and $30 per month; that after the loan of $1,000 to Welch, the remaining $713 in gold was placed on special deposit in the Berea Bank for a time, and then upon solicitation of the cashier $710 of it was put on general deposit, there having been kept out a $3 gold piece because of its rarity.

Mr. Robert Burnam testified that he was Cashier of the Madison National Bank, and that appellant had for two or three years a little bag which she kept on special deposit at that bank; and that she and her daughter would sometimes come there and take the bag, and later re-deposit it; that he had been in the banking business for a long time, and was a very good judge of the weight of gold; that while he did not know what was in the bag deposited by Mrs. Fish, he frequently handled it in taking it from and returning it to the vault; that from recollection he would say that the bag weighed something like

three or four pounds; that $1,713 in gold would weigh from six and a half to seven pounds.

The Teller of the bank also testified that he had handled the bag, and that while he had not had as much experience as the Cashier, from handling it he had the impression that there was from $1,200 to $2,000 in the bag, but that there might not have been exceeding $800. This was all the evidence for the plaintiff.

The evidence for the defendant is that S. E. Welch was a man of wealth; that he lived five months after the alleged loan; that during December, 1909, and the preceding and succeeding months he at all times had on deposit sums ranging from $2,200 to more than $6,000; that during that period he had purchase money notes amounting to $3,000 upon which he could have easily realized; that a careful examination of all his books and papers disclosed no record, or any indication of the alleged $1,000 loan; that he never deposited at that time or any other time $1,000 in gold in the bank.

It is peculiarly the province of a jury to weigh evidence and pass upon the credibility of witnesses, and we are unable to say that there is no evidence to support this finding, or even that the verdict is against the weight of the evidence.

It is complained by appellant that counsel for appellee in his argument improperly stated to the jury that the record in a certain proceeding by a revenue agent against appellant to assess this gold for taxation had been prepared by one or both of them for the purpose of using it as evidence in this case, and had been "fixed" for that purpose. It appears from the evidence that none of this gold so owned by appellant had been taxed previous to the institution of this action, but that subsequent to the filing of this suit a proceeding was begun in the county court seeking to assess the money, and that there was an agreed judgment in that proceeding wherein $150 had been assessed against appellant for each of the years of 1906 and 1907, $500 for the year 1908, and $1,713 for the year 1909. The very fact that this was an agreed judgment, and that the judgment was entered after the institution of this action, fully authorized the attorney for the defendant to draw this deduction; and we are unable to see that there was anything unfair in such an argument. He might very well have argued further that as this agreed judgment showed she only had $500 in gold in

September, 1908, and that although she was admittedly not in business between then and December, 1909, and had a very small income, her claim that she had in that time accumulated, from time to time, more than $1,200 in gold over and above her living expenses, was untenable.

It is urged for appellant that she should at least have been permitted to testify that in December, 1909, she had $1,713 in gold on special deposit in the Madison National Bank, and that she took same to Berea, and afterwards deposited in the Berea Bank $713. To permit her to testify to this would be to permit her, in effect, to say that she had $1,713 in gold on the night that Welch was at her house, of which her daughter speaks, and thereby, inferentially allow her to testify against Welch, who is dead, that she had loaned him the $1,000. Manifestly this evidence was improper.

It is further urged that after the administrator was permitted to testify that Welch did not need the money, and that there was no record among his papers of any such loan, that she should have been permitted to testify what Welch wanted with the money. Such testimony she could not have given without saying what Welch said to her, and clearly such evidence was incompetent.

Further objection is offered to certain testimony given by the administrator expressing his opinion and using arguments as to why this loan had not not been made; but upon examination we find that all this evidence was brought out on cross-examination by appellant's counsel and no exception taken to it.

We are of opinion that appellant has had a fair trial upon the issues made, and the judgment is affirmed.