JOHN HAYES, Appellee, v. EMMA SNADER, Appellant.

WITNESSES:    Competency—Transaction with Deceased—Proper
1  and Improper Tests.  The fundamental test of competency of a
   party to an action against an administrator of a deceased to
   testify to relevant matter, is whether such matter constitutes
   a part of the warp and woof of something mutually said or ·
   something mutually done by and between said witness and
   .said deceased which tends to establish the claim in suit,
   and not whether said matter
        (a) is matter which has bearing on an implied contract, or
        (b) is matter vital to recovery by said party, or
        (c) is matter concerning which said party and said deceased
   both had personal knowledge, or
        (d) is matter which deceased could dispute were he alive.

WITNESSES:    Competency—Transaction with Deceased—Matters
2  of Observation.  A party to an action against the administra-
   tor of a deceased, on an implied contract for services rendered
   the deceased, is competent to testify to matters learned by him
   solely from personal *observation* of the deceased, even though
   such observed matters tend to furnish basis for the alleged im-
   plied contract: i. e., that he had seen deceased when deceased was
   well, when he was ill, what the illness was, and its duration
   and frequency.

*Appeal from Black Hawk District Court.*—GEORGE W. DUN-
HAM, Judge.

JANUARY 11, 1918.

APPELLEE had a verdict for services rendered appellant's
decedent.  The sole question presented by the appeal is
whether testimony for plaintiff was received in violation of
Section 4604 of the Code.—*Affirmed.*

*Edwards, Longley, Ransier & Smith,* for appellant.

*Mears & Lovejoy,* for appellee.

SALINGER, J.—I.   Complaint is made be-
cause plaintiff was permitted to testify he

1. WITNESSES:
competency:
transaction
with deceased:
proper and
improper tests.

had seen deceased when the latter appeared
to be sick, what the sickness was, how long
it lasted, how often this occurred, and that
he had seen deceased when the latter was not
ill.   The specific complaint is that this testimony tended
either to build up or else fortify a contract by implication;
that it was essential evidence on the question of what
amount was due on plaintiff's claim; that, under *Bartholo-
mew v. Adams,* 143 Iowa 354, at 359, what this amount is
must be clearly proved, and not left to mere conjecture;
that, without the alleged objectionable evidence, there would
not have been the definite showing that is necessary on this
point, and it is said that the attorneys for the appellee
recognize this to be so by the fact that they put in this tes-
timony.   It is argued that objections to same should have
been sustained, because, on the authority of *Sheldon v.
Thornburg,* 153 Iowa 622, 626, and 40 Cyc. 2314, its reception
violated Code Section 4604.   In the definition found in the
*Sheldon* case, one statement is that the statute covers "any-
thing said or done between the witness and deceased."   But
saying that a man is sick, that witness noticed how long the
illness continued, that he saw what the other did while sick,
is not a statement of anything said or done "between" the
witness and deceased, but is a narration of what the ap-
pearance of deceased was, and what he alone did.   Neither
is it within that other statement in that definition, "any act
or communication in which both had any part."   True, this
definition says further, "and of which both had knowledge,
and concerning which the deceased, if living, could speak in
corroboration or denial of the statements of the living wit-
ness."   If this be construed to mean that the plaintiff may
speak to no matter of which both he and decedent had knowl-
edge, and which decedent, if living, might deny, then the

statute enacts an utter absurdity. It has never been held, under statutes like our own, that the plaintiff is an incompetent witness, and always been held that there are some things concerning which he may speak. But this would not be so if these words in the aforesaid definition are to be given the effect for which appellant contends. There is *no* statement the witness might make which the decedent might not have denied were he living. And surely it is not the test that the witness speaks to something which was in the knowledge of both the decedent and himself. This would exclude his testimony that he was acquainted with the decedent, or that he was at his house on a stated day. The fair meaning of the definition as a whole is that the witness may not speak to something of which both had knowledge, and which decedent might deny if he were living, if the things spoken to be something said or done between him and deceased. The text of 40 Cyc. 2314 has the broad language that "personal transactions" include "every means by which one person can derive any impression or information from the conduct or language of another." While some such rule as that prevails on what is covered by the privilege in communicating with a physician, we shall presently attempt to show that this is not the rule in this jurisdiction when dealing with Section 4604. This court is certainly not committed to the doctrine that this statute excludes the use of "every means by which one person can derive any impression or information from the conduct or language of another." One means of deriving such impression or information from the conduct or language of another is to hear what he says to a third person. But we have held that such testimony is not excluded by this statute. *Campbell v. Collins,* 133 Iowa 152; *In re Estate of Goldthorp,* 94 Iowa 336,—in which last case we expressly rule also that it is permitted to receive testimony describing the condition of a testator though that testimony is based on observation, excluding only that which

is based both upon such observation and statements made by the decedent to the witness. To a certainty, testifying to facts upon which an inference in favor of the claimant may arise, is based on the fact that some means has been employed whereby the witness has derived some impression or information from the conduct or language of the decedent. But that this is so does not shut out testimony upon which such inference can be built. *Campbell v. Collins*, 133 Iowa 152, 156, *Yoder v. Engelbert*, 155 Iowa 515.

As a summary, appellant contends that the test of whether a transaction may be testified to is: (1) Would the case fail without such testimony? (2) Is it matter that could be denied by deceased if living? These can scarcely be the touchstone. We have already indicated that, if the possibility of denial were the deceased living is to control, the statute amounts to prohibiting the plaintiff from testifying at all; and that we will not so construe. We are of opinion that no more is it the test whether the case would fail without the alleged objectionable testimony. For, so far from its being true that such testimony is prohibited because it is vital, we have reversed because the exclusion shut out testimony that was vital. See *Campbell v. Collins*, 133 Iowa 152, 156.

In the opinion of the appellant, it seems to be a controlling factor that the plaintiff is relying upon an implied contract. While that is his reliance, we are unable to say that more follows than that he may not support it by testimony which would be incompetent if addressed to the proof of an express agreement. But that the testimony must submit to this test does not in the least tend to show that it would be incompetent in either case. What if it does tend to prove an implied contract? Surely, it is not objectionable that testimony addressed to proving a contract is relevant. Such testimony becomes incompetent only if the proof is of a forbidden character. Had a stranger to the suit given the

testimony here objected to, it would not be contended that it should have been excluded because it tended to prove that to which it was addressed. The vital thing is, what is the nature of the proof, not what does it tend to establish. The sole question here is whether what was objected to spoke to a "personal transaction or communication between such witness and the decedent." If it did not do that, it is wholly immaterial who gave the testimony, or what it tended to establish.

II. The question before us is still narrower than that. We are told that *Holcomb v. Holcomb*, 95 N. Y. 316, *Wilber v. Gillespie*, 127 App. Div. 604 (112 N. Y. Supp. 20), and *Van Wagenen v. Bonnot*, 74 N. J. Eq. 843 (70 Atl. 143), decide that the testimony admitted here should have been excluded as prohibited by a statute like ours. For the sake of argument, we will assume that this is so. But if it is the settled rule in this jurisdiction that this testimony was admissible, we are not controlled by decisions to the contrary in other jurisdictions; and the question presented is foreclosed on this appeal, unless we are minded to overrule our own decisions.

The appellant contends, first, that our own decisions are with him, and second, that they are against him, and should be overruled. We will dispose of the first contention first. In its support, we are cited to certain of our decisions, and we now proceed to their analysis.

Whatever is said in *Peck v. McKean*, 45 Iowa 18, is to be limited by the point decided: that, where an implied contract is relied upon, the plaintiff may not testify "to show the work done by her for the deceased and its character." The utmost the plaintiff here did was to show a situation existed which might need the services of someone. He did not attempt to say that he rendered any, and therefore did not attempt to say what the character of the services rendered were.

In *Smith v. Johnson,* 45 Iowa 308, the same care is due in considering general language used. The testimony held inadmissible on the authority of *Peck v. McKean,* spoke "to the facts that he performed labor for the decedent, the time he was engaged in such service, the kind of labor done by him, his ability to perform a man's work, and that he had received no compensation for his labor."

In *Wilson v. Wilson,* 52 Iowa 44, *Peck v. McKean* and *Smith v. Johnson* are approved, and on their authority it is held that plaintiff might not testify, as a foundation of an implied contract, "to facts connected with the condition of his father, his age, etc." This is the only statement of what these facts were. If they were excluded on the authority of these other decisions, they must have been connected with a condition of the father and his age, in the sense that they included an attempt to show what was done and what was promised in view of the condition and the age.

*Ballinger v. Connable,* 100 Iowa 121, again approves *Peck v. McKean.* What is there said is once more addressed to the facts in the record, and the testimony excluded was that of a plaintiff whose title to a farm purchased for him by the father rested on a will, who was put into possession without a conveyance to him and as part of his distributive share at its cash valuation, and attempted to testify on trial of exceptions to the report of distribution, who made improvements on the land and paid for the windmill and waterworks that the father had put on the land.

In *Herring v. Estate of Herring,* 94 Iowa 56, the testimony excluded was offered in support of a claim for services rendered, and consisted of what was done, and that advances were made and not repaid.

Whatever is said in *Sheldon v. Thornburg,* 153 Iowa 622, 627, must be limited by the fact that what the court speaks to is an attempt of the plaintiff to testify she had a conversation with deceased about the services and about the compen-

sation she was to receive for them. This testimony was manifestly inadmissible, and it is in support of its exclusion that *Peck v. McKean, Smith v. Johnson, Herring v. Herring,* and *Ballinger v. Connable,* are cited. The case merely adds an additional reason why, when the alleged contract is one by implication, the testimony should be excluded in pointing out that, where there is a presumption that services rendered were gratuitous, testimony that they were rendered should not be received; because the jury might be misled, from being allowed to hear it, into believing that it was of value, and into supplying a failure to show what they were worth by presuming it was intended that the reasonable value of the labor should be paid the laborer. The facts, then, differentiate this from the *Sheldon* case.

In *Graham v. McKinney,* 147 Iowa 164, inquiry as to what amount of board or care decedent required was not permitted. In *Marietta v. Marietta,* 90 Iowa 201, *Peck v. McKean, Smith v. Johnson,* and *Wilson v. Wilson* are distinguished.

### 2-a

Carefully considered, none of the fore-

2. WITNESSES: competency: transaction with deceased: matters of observation.

going sustain the appellant. If there were any doubt about it, we have settled that the testimony here received was rightly received.

In *Marietta v. Marietta,* 90 Iowa 201, we hold squarely that plaintiff may testify, on a claim against an estate of a decedent, what the condition of the decedent was, and what care and attention he required. It will be seen this goes at least one step beyond what the plaintiff in this case did. *In re Estate of Goldthorp,* 94 Iowa 336, holds the witness may state what condition the testator was in, so long as this is based on observation alone. In *Graham v. McKinney,* 147 Iowa 164, testimony is held admissible which states whether decedent roomed and boarded elsewhere, and whether others rendered him similar services during his ill-

ness.  In *Yoder v. Engelbert*, 155 Iowa 515, we say that one who seeks to establish a claim against an estate may testify to facts and circumstances ascertainable by mere observation, even though inferences may be drawn therefrom which tend to support his claim; and that, where it appeared from other competent evidence that decedent made his home with plaintiff for a large part of a specified time, the plaintiff was competent to state the times when decedent came and went, when he made visits to other places, and when he was absent from plaintiff's home.

No more effective way of exhibiting how fully the *Yoder* case sustains the rulings here can be found than to set out the typical testimony the reception of which is sustained in the *Yoder* case, and the typical testimony in the case at bar. That in the *Yoder* case was:

"Q.  Do you remember when Joseph McArtor came to your place in the fall of 1902?  A. Yes, sir.  Q. About what time was it, Mr. Yoder?  A. It was in the fall of 1902.  Q. Do you remember about what time—what month?  A. Well, it was, I think, about corn-shucking time.  That would be along in September.  Q. How long did he stay there at your place that time, if you know?  A. Well, he stayed all that year. Q. How long was it after he left when he went to Victor until he came back to your place; if he did come back?  A. About three weeks.  Q. How long did he stay at your place after he came back there from Victor?  A. He stayed there until we moved, and then he continued from that time with us."

The typical testimony in the case at bar is:

"Q. Mr. Hayes, after the time in July, 22 years ago, which you have mentioned, how often did you see Mr. Wagner? A. Well, I saw him sometimes once a week, sometimes twice a week.  Q. And where did you see him?  A. To my place. Q. Did you see him in any of these early years when he appeared to be sick?  A. I have.  Q. You may examine your

memorandum and refresh your recollection thereby, and state in what year it was that you saw Mr. Wagner sick the first time. A. He came there in September, 1897. Q. Now what was his condition at that time? A. He came there with the summer complaint. Q. You may describe his condition at that time with reference to this summer complaint. A. Well, he came there with what we call the summer complaint. I call it the diarrhoea. His bowels was in a running and loose condition when he came there. Q. Over what period of time did this condition of his bowels as you have described it continue, so far as you observed. A. Well, it was that way for about five days."

Appellant attempts a distinguishing of the *Yoder* case, and it is that the evidence held admissible in that case related solely to the duration of the visits of the deceased; while in this case the testimony covers also the character and nature of the illnesses, their duration, and the additional fact that, when the decedent was at the home of plaintiff, he blew his nose. This is a distinction as to what the testimony was. But it does not base a differentiation of the law rules to be invoked. If the duration of the visits of deceased may be testified to by the plaintiff, that is so because such testimony does not state anything said or done between plaintiff and the deceased. If that makes the testimony admissible, it also makes admissible the additional matter upon the presence of which it is attempted to found the distinction.

III. In the last analysis, appellant has realized that, if he is to prevail on this appeal, he must show cause why we should overrule several of our own cases. He argues that the *Yoder* case is not well decided; why, in his opinion, it is not well supported by what it cites; that the case it does cite is not well reasoned; and finally says, in so many words, that, if *Campbell v. Collins* and *Graham v. McKinney* and

the *Yoder* case are to remain the law, we have indulged in judicial recall of Section 4604.

We are not minded at this time to overrule these cases. They govern this appeal. Therefore, the judgment below must be—*Affirmed.*

PRESTON, C. J., LADD, EVANS, and GAYNOR, JJ., concur.