## Isert's Administrator v. Carroll.

(Decided May 17, 1927.)

### Appeal from Hardin Circuit Court.

1. Evidence.—In action on notes which indicated that proceeds of the notes were used to buy corn and stock, and that such stock was perhaps delivered to the payee in payment of the notes, but which did not describe the property, held that parol evidence was admissible to identify the property and perhaps to explain the full contract between the parties.

2. Witnesses.—In action by payee's administrator on notes indicating that proceeds were used to buy corn and stock and that stock was perhaps delivered to payee in payment, maker might not testify to the transaction with the deceased payee nor identify the property and use this as a basis to show payee received it, under Civil Code of Practice, section 606, subd. 2.

3. Witnesses.—In action by payee's administrator on notes indicating that proceeds were used to buy corn and stock and perhaps that stock was delivered to payee in payment, maker might testify to transactions with deceased payee's employees and to purchases of stock from other persons, if not connected with transaction with deceased under Civil Code of Practice, section 606, subd. 2.

4. Bills and Notes.—Possession of notes by payee prima facie rebuts theory of payment.

5. Bills and Notes.—In action on notes indicating that proceeds were used to buy corn and stock and perhaps that the stock was thereafter delivered to the payee in payment of the notes, whether notes were paid held a question for the jury.

H. L. JAMES for appellant.

L. A. FAUREST for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Louis Isert's administrator sued S. T. Carroll on the three obligations set out infra. The defense was a plea of payment. Plaintiff appeals, and for reversal insists (1) that the court erred in the admission of evidence; (2) that a directed verdict should have been given for defendant. The obligations read:

"$585.00       Elizabethtown, Ky., Oct. 18, 1922.

"Six months after date I promise to pay to the order of the First Hardin National Bank, Elizabethtown, Ky., five hundred and eighty-five dollars, negotiable and payable at the First Hardin National Bank, Elizabethtown, Ky., with interest at the rate of six per cent. per annum from ———— until paid, value received. The drawers and indorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note.
"(Signed)    S. T. Carroll."

(Indorsed on back as follows:)

"This note is to stand 22 heifers. Received 8 heifers 21203 on 2/26/23. March 9, received 52 66/100 for the heifers."

"Elizabethtown, Ky., June 15, 1923.

"One day after date I promised to pay Louis Isert Forty seven ($47.00).
"(Signed' S. T. Carroll."

(Indorsed on back as follows:)

"Hogs corn."

"Elizabethtown, Ky., Jan. 2, 1923.

"I have this day received Louis Isert $173.00 one hundred and seventy-three dollars which I pur-

chased 30 stock hogs, these hogs are to stand good
for this amount at six per cent. until paid.

"(Signed)   S. T. Carroll."

Over the objection of plaintiff the defendant was
permitted to read these papers and their indorsements
and testify as follows:

"Q. What did you do with these 22 heifers
mentioned in the first note? (Objection and ques-
tion withdrawn.)

"Q. When those heifers left your possession,
what condition were they in? A. They were fat.

"Q. About what would they have weighed on
the average do you think? A. Well something over
700 pounds.

"Q. Who took them away from your premises?
A. I delivered them with the help of Mr. Hillary
Sherrard and Mr. Elmer Slack; they came out there
and helped me drive them away.

"Q. Were they taken in different bunches at
different times or altogether? A. In different
bunches at different times.

"Q. This note dated January 2, 1923, shows
that you purchased 30 stock hogs. From whom did
you purchase 30 stock hogs?

"Court: Were they bought from another party
altogether? A. Yes, sir.

"A. I bought some of them from Mr. H. M.
Sykes, some of them from Mr. L. A. Faurest, and
some from Mr. Jim Bobo.

"Q. Does that include the 30 and 10 mentioned
in the next note of January 26th? A. Yes.

"Q. Who took those hogs away from your
place? A. Elmer Slack.

"Q. Did he take all of the 40 head? A. To the
best of my knowledge he did.

"Q. Did Mr. Slack and Mr. Sherrard take all
of these 22 head?

"Court: He said that awhile ago; he said that
they did.

"Q. What condition were those hogs in when
they were taken from your place? A. They were fat
marketable hogs.

"Q. About what would they weigh on the av-
erage? A. Well, they would average, I judge, about
200 pounds; they were fed all summer and winter."

Over the objection of plaintiff, defendant introduced in evidence a fourth note reading as follows:

"487.90　　　Elizabethtown, Ky., Nov. 28, 1923,

"Six months after date I promise to pay to the order of Louis Isert four hundred and eighty seven and 99/100 dollars negotiable and payable at the First Hardin National Bank, Elizabethtown, Ky., with interest at the rate of six per cent. per annum from date until paid, value received. The drawers and idorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note.　　　(Signed)　　S. T. Carroll."

Indorsements on the back as follows:

| | | |
|---|---|---|
| Jan. 16, 1924, Wt. of Cattle | $197 | 00 |
| Jan. 31 | 148 | 00 |
| Feb. 22 | 185 | 00 |
| | $530.00 | |
| | 487 | 90 |
| | $ 42 | 10 |
| Interest | 10 | 91 |
| Bal. | $ 30 | 19 |

This note had been delivered to him after Isert's death by his administrator. Isert was a butcher and Carroll a farmer. Hillary Sherrard had worked for Isert for a number of years, ceasing work in the spring of 1923. He was succeeded by Elmer Slack, and it appears that Sherrard returned in October of that year and resumed his former labor, continuing until Mr. Isert's death in 1924.

Sherrard testifies that he knew of Mr. Carroll feeding cattle for Mr. Isert; that while working at the butcher shop he made a number of trips out to Mr. Carroll's place and brought in two or three of these at a time; that four or five per week were thus butchered, though he does not remember the number of trips that he made. He was present at a conversation between Mr. Isert and Mr. Carroll in the fall of 1923, later than October. Mr. Carroll paid off a note which was not delivered to him, Mr. Isert saying that he would look it up. Slack testifies that along in April or the 1st of May,

while working for Mr. Isert he went out to Carroll's farm and brought in 8 or 10 heifers that were butchered; that he got all that were left at Carroll's place and that Mr. Isert received and butchered these. He also knew of the arrangement between Mr. Isert and Mr. Carroll for the latter to fatten a bunch of hogs and bring them back and Isert was to pay him the market price therefor; that Carroll delivered these hags, and Isert butchered them. He does not know how Isert settled for either the cattle or the hogs.

1. The papers in suit indicate a purchase of corn and stock by Carroll either from Isert or from other parties, with the proceeds of the notes. And perhaps an agreement for the future delivery of the stock to Isert in payment, but there is no description of such property. In this respect the writings are so meager that parol evidence is permissible to identify the property and perhaps to explain the full contract between the parties, but such evidence involves a transaction with a deceased person, and Carroll, being a party, is prohibited from testifying himself in reference thereto. Section 606, Civil Code, subd. 2. Nor can he first identify the property and then use such identification as a basis to show what became of the property. He is a competent witness as to the transactions with Sherrard and Slack, and may testify as to purchase of stock from other persons if not connected with the objectionable matter above set out, but for this reason the case must be reversed.

2. It is shown by competent evidence that Isert was furnishing money to Carroll for the purchase of stock and that Carroll was feeding them, and delivering them when fattened to Isert. It is shown that in the spring of 1923, he did deliver a number of cattle to Isert which do not appear as a credit on any of the papers filed, and the same as to the hogs which were delivered in the fall of 1923. It further appears that the note of November 28, 1923, which was executed subsequent to the due date of the other papers and which matured six months thereafter, has been overpaid. Of course all of the deliveries of stock above mentioned could have been paid for in other ways than as a credit on the notes mentioned, and the possession of these by Isert prima facie rebuts the theory of payment, but it is unnatural for parties dealing in this way to fully pay off a subsequent note while prior notes remain due and unpaid, and, in view of the fact that the cattle were delivered as indicated and do

not appear as a credit on any of the papers, we think this raised a scintilla of evidence that authorized a submission of the case to the jury.

Wherefore the case is reversed, and cause remanded for proceedings consistent with this opinion.