WALKER & DAVIS, Appellants, v. CHARLES A. IRWIN.

**Statute of Frauds:** DEBT OF ANOTHER. An attorney, acting for his client, requested services for that client and subsequently promised in writing to pay for services had whenever the client furnished him money. The money was furnished. *Held*, the agreement is within the statute of frauds.

**SAME:** CONSIDERATION. The subsequent promise to pay if no suits were brought against the attorney, is without consideration.

**Practice:** PLEA AND PROOF. An express agreement to pay attorney fees cannot be supported by proof of the value of such services; and where the one is plead and the other proven, there is a fatal variance.

**ESTOPPEL.** Public policy does not prevent a garnishee who answers that money attached is given him to pay a certain claim, to deny liability when sued on such claim.

*Appeal from Buena Vista District Court.*—HON. GEORGE H. CARR, Judge.

SATURDAY, APRIL 6, 1895.

Action at law to recover attorney's fees and incidental costs and expenses. The court directed a verdict for defendant. Plaintiffs appeal.—*Affirmed.*

*H. F. Galpin* for appellants.

*C. A. Irwin pro se.*

Deemer, J.—I.  The plaintiffs are attorneys at law, residing and doing business in the city of Chicago. The defendant is also an attorney at law, located at Storm Lake, Iowa. Plaintiffs, in the first count of their petition, alleged:  That on or about September, 1891, at the special instance and request of defendant, they rendered certain legal services in the courts of Chicago in a case concerning one Samuel Matheson, Jr., and paid out certain moneys for defendant's use and benefit.  That the request was orally made to procure the aid and assistance of plaintiffs in certain litigation then pending in Cook county, Illinois, against Matheson, and the promise to pay was oral and in writing; the written part being a letter from defendant to plaintiffs, as follows:  "Storm Lake, Iowa, November 9th, 1892.  Messrs. Walker & Davis, Chicago, Ills.— Gentlemen:  As you suggested, I have in my hands $100.00, which I hold as garnishee in the case of Parker & Ticknell vs. Samuel Matheson, on the strength of my liability, real or supposed, to see that you were paid your fees.  It is also true that I expect to see that you get your fees.  If no suit is commenced against me [meaning thereby, by Matheson], I will remit the amount of your fees to you,"—written after the services were performed; and the oral part, which was made before the services were rendered, being in substance that Matheson was to make or had made an assignment of certain money to defendant, part of the consideration

of which was that the defendant should pay plaintiffs' claim; and defendant promised and agreed that, when he received said moneys, he would pay plaintiffs' claim. That defendant has received the money or the assignment, and has not been sued by Matheson, and has not paid plaintiffs any part of their claim. In a second count to the petition, plaintiffs alleged that in September, 1891, Matheson had about one thousand one hundred dollars in money due him on a certain draft, and, in consideration of the services rendered by the plaintiffs as before stated, Matheson agreed with plaintiffs and defendant to assign the money to defendant, upon the express agreement between all the parties that defendant was to collect the money, and out of the proceeds pay plaintiffs one hundred dollars for the services performed by them. The defendant received the money on the draft, but fails and refuses to pay plaintiffs the one hundred dollars as agreed. Defendant answered, denying all the allegations of the petition, pleading that all the transactions between him and the plaintiffs were on Sunday, and therefore against public policy, and averred that the alleged agreements of defendant were and are without consideration, and, if made, were mere oral promises to answer for the debt of Matheson, and are void under the statute of frauds. The plaintiffs filed a reply, in which they alleged that some time in November, 1892, defendant was garnished as a supposed debtor of Matheson, and in his answer as such garnishee admitted under oath that he was under obligations to pay plaintiffs one hundred dollars for their services out of the money he had received from Matheson, and claimed that Matheson made the assignment to him to secure his fees for services rendered Matheson, and to pay plaintiffs' claim, among others; that, by reason of his said answers, he escaped liability to the execution

plaintiffs as garnishee; and that he is now estopped, on the ground of public policy, from maintaining his defense to this suit. A motion to strike this reply was sustained, and this ruling presents the first question in the case.

Undoubtedly the answers alleged to have been given by defendant as garnishee may be used as admissions against him the same as any other declarations, but are such admissions conclusive upon him? is the real question. There is no allegation that the plaintiffs acted upon them, or that they changed their position in any manner on account thereof, and there is no estoppel on this ground. It is said, however, that, having been made in a court of justice, defendant is estopped to deny them on the ground of public policy. If the plaintiff had been a party to the proceedings, or if Matheson, the principal debtor, were bound by the statements of defendant as a garnishee, or if the creditors in the garnishment proceedings were estopped from pursuing the defendant further, in the event it were discovered that there was more money in defendant's hands than he admitted in his answers, there would be much force in plaintiffs' position. But none of these things are true. We can see no valid reason, then, why defendant should be estopped, on the ground of public policy, from denying a liability to plaintiffs, although he may have admitted it in the garnishment proceedings. There is no good reason for saying the plaintiffs are entitled to the money in defendant's hands, although he may have admitted he was liable to them therefor in the garnishment proceedings, unless, as a matter of fact, they are entitled to it, or unless it appears that they in some manner changed their position so that they may be prejudiced by defendant's present denial of liability.

II. Save the defendant's admission and the letter heretofore set out, there is no testimony tending to show that the defendant requested plaintiffs to perform any services for Matheson, or that he promised to pay for such as might be rendered except as the agent or the attorney for Matheson. Witness Walker, one of the members of the plaintiffs' firm testified that defendant was guarded in his language, and that there was no positive agreement that Irwin should pay plaintiffs for their services unless he obtained the money from Matheson, under an assignment from him (Matheson), and that he (Walker) was led to believe that Irwin wished to avoid personal liability in case he did not get the money on the assignment. Witness Davis, another member of plaintiff firm, testified that defendant said he would pay plaintiffs' fees when he obtained the money on the assignment executed by Matheson. Another of plaintiffs' witnesses testified that defendant said that he would see plaintiffs were paid for their services out of the money that would come into his hands from this assignment. From the other testimony in the case it appears that Matheson was taken to the city of Chicago on a criminal charge, and there confined in a public prison; that defendant was called there to defend him, and to secure his release; and that, having been recommended to plaintiffs as skillful and reputable attorneys, he went to them to procure their assistance in Matheson's case, whereupon the conversations before referred to with plaintiffs were had. It is quite clear from all the testimony that the services plaintiffs rendered were for Matheson, and that they did not look to defendant for their pay, unless he received the money on a certain assignment made to him by Matheson about that time. Plaintiffs understood at all times that defendant was attorney for Matheson, and that he

was contracting with them for services as such. They do not claim that defendant agreed to pay the bill except upon conditions. It appears from the testimony that Matheson had about one thousand one hundred dollars in a bank at Storm Lake, in the form of drafts or certificates of deposit, which he assigned to defendant ostensibly to pay or secure an indebtedness due him. This is the assignment referred to by plaintiffs' witnesses. The lower court ruled that all the promises made by the defendant were within the statute of frauds, and that the promise contained within the letter, if any such there be, was without consideration. It appears to us that this is correct. The testimony tends strongly, if not conclusively, to show that plaintiffs looked upon Matheson as the principal debtor, and that defendant's promise, if any, was contingent and collateral,—contingent upon his receiving the money on the assignment, and collateral to Matheson's obligation to pay. This being true, it was clearly within the statute of frauds. *Sternburg v. Callanan,* 14 Iowa, 251. *Beerkle v. Edwards,* 55 Iowa, 750; *Benbow v. Soothsmith,* 76 Iowa, 151; Browne, St. Frauds, section 197. The happening of the contingency of defendant's receiving the money on the assignment did not make his promise an original one. The agreement was to step into the place of Matheson, and pay his liabilities, upon certain conditions. It is no less collateral than if the contingencies had not happened. *Kauffman v. Harstock,* 31 Iowa, 472.

III. It is also contended that there is an express written promise to pay plaintiffs' claim in the letter before set out. It is doubtless true that there is a promise to pay plaintiffs in the event Matheson com-

menced no suit against defendant; and it is shown that Matheson commenced no suit. But the inquiry suggests itself, where is the consideration for such a subsequent promise? If defendant had previously requested the services performed by the plaintiffs, or if they had been performed for defendant with his knowledge or consent and for him, no doubt the subsequent promise would be valid. But, as we have seen, there was no request that plaintiffs should perform the services for him. They were performed for Matheson. So far as shown, defendant received no personal benefit from plaintiffs' services, and there is no reason why the law should imply a previous request. We think it was a mere *nudum pactum.*

IV. The case should have gone to the jury on the second count but for one thing. It is alleged therein that defendant, in consideration of the assignment to him by Matheson, expressly agreed to pay plaintiffs one hundred dollars for the services rendered by them to Matheson. Now, there is no testimony whatsoever showing or tending to show that the amount of plaintiffs' fees was agreed upon, or that the defendant did more than agree to pay plaintiffs' claim. The amount was never agreed upon, and plaintiffs undertook to prove the value of their services, and to recover on the alleged promise to pay their claim, no matter what it might have been. It seems to us that there was a fatal variance which justified the court in taking the case from the jury on this point. The familiar doctrine that, if one declares upon a specific contract, he cannot recover on *quantum meruit,* obtains. *Lines v. Lines,* 54 Iowa, 600; *Beebe v. Brown,* 4 G. Greene, 406.

While, from a moral standpoint, defendant may not appear to have acted in good faith with his brethren in profession, yet, from a legal point of view, under the

now well-established rule announced in *Meyer v. Houck,* 85 Iowa, 319, we think the defendant is not liable, and that the court did not err in directing a verdict for defendant.—*Affirmed.*