## CRAVENS v. CLIMAX ENGINEERING CO.
### No. 8704.

Circuit Court of Appeals, Eighth Circuit.
March 29, 1930.

Alfred Roy Hulbert, of Chicago, Ill. (David D. Stansbury and Richard H. Welsh, both of Chicago, Ill., on the brief), for appellant.

George Claussen, of Clinton, Iowa (W. M. Chamberlin, of Davenport, Iowa, and John L. Wolfe, of Clinton, Iowa, on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges, and REEVES, District Judge.

STONE, Circuit Judge.

From a judgment entered on directed verdict in favor of the defendant in a suit upon a contract, this appeal is brought.

In 1922, appellant was an engineer and industrial counselor and appellee was a corporation organized under the laws of Delaware, apparently doing its business mainly in Iowa. At that time, the capital stock of appellee consisted of 5,000 shares of preferred stock, with a par value of $100, and 10,000 shares of common stock without par value. At that time, the situation of the company was such that it desired the services of the appellant to take virtual charge of its active business operation. After some negotiations, an agreement was arrived at for the employment of appellant by appellee. That agreement is set forth in a letter by appellant to appellee, of January 23, 1922, wherein the material portion is as follows:

"Confirming our various conversations of last week, regarding my joining your organization as First Vice President and General Manager, kindly note that I shall be pleased to come with you in such capacity at a salary of eighty-four hundred dollars ($8400.00) per year, payable monthly, plus a stock allotment of twelve hundred and fifty (1250) shares of the Common Stock of the Company. The stock is to become my property at the end of three (3) years, if I am still with the company, but I am to receive such dividends as may be declared thereon in the meantime."

On February 6th, the chairman of the board of trustees, the president of appellee, answered writing two letters to appellant. In one of these he informed him of his election, in the place of the writer, as president of the company, and outlined the manner of payment of his salary. The other letter was as follows:

"I enclose herewith certificates No. 20, 22, and 24 for 550, 250 and 450 shares respectively, total 1250 shares Climax Engineering Company Common Stock, made out in your name and dated January 26, 1922. In accordance with our understanding please endorse these certificates in blank in the presence of two witnesses and return them to me by return mail tomorrow.

"It is the understanding that these certificates are to be held by me in trust for the Company, and are to become your property at the end of three years from February 1, 1922, in the event that you are still with the Company, and that any dividends declared on same in the meantime are to belong to you. Please be sure to return these promptly by mail tomorrow."

The certificates were so indorsed by appellant and returned and so held by the writer, G. W. Dulany, Jr.

Thereafter, in May, 1923, those in control of the company determined upon a reorganization of its financial structure by an increase of capital from $500,000 to $2,500,000, divided into 25,000 shares of common stock with a par value of $100. The outstanding preferred stock was to be exchanged equally for this common stock and the outstanding common stock (of no par value) was to be retired without compensation. This arrangement was carried through by proper resolutions and action of the stockholders at meetings, apparently regularly held. In the meeting making the above changes, appellant participated, and he made the certificate regarding that meeting and upon which the financial structure was changed. Also he participated as a director in the meeting of the directors calling the above stockholders' meeting. Also he introduced the motion, at the stockholders' meeting, for such change. Also, at that stockholders' meeting, at which he was present, he was elected as a vice president and general manager. As president, he signed the notice for the stockholders' meeting. At this meeting, the secretary, in announcing the stock present in person and by proxy, included, among those present in person, "G. W. Cravens 1250–Com." In accordance with this action of the corporation, all of the no par value common stock, including this issued to appellant and held by Dulany, was surrendered and canceled.

Appellant continued with the company until in July, 1925, when, because of differences arising, he was asked to and did resign; whereupon, and apparently for the first time, he made demand for 1,250 shares of stock of the company. That demand being refused, this action was filed. The petition sets forth the contract of employment and its full performance by appellant. The petition contains the following:

"Fourth: That thereafter and on, to-wit, the 6th day of February, 1922, there was issued by the defendant in the name of the plaintiff, and delivered to the plaintiff by G. W. Dulany, Jr., then and there the President of said Climax Engineering Co., defendant, three certain certificates of common stock of the said defendant, one of which certificates bore No. 20 and one was for 550 shares of said common stock, the second bore No. 22 and was for 250 shares of the said common stock, and the third bore No. 24 and was for 450 shares of the said common stock; that as a part of said agreement, it was understood by the parties thereto that the plaintiff was to endorse each of said certificates of stock in blank and to deliver them to the said G. W. Dulany, Jr., to be held by him in trust for the defendant, the said shares of stock and the said certificates representing them, to become the property of the plaintiff in the event he was in the employ of the said Company three years after the first day of February, 1922. * * *

"Ninth: That during the period of his said employment he was paid said salary of $8,400.00 a year, but the plaintiff avers that the said defendant, Climax Engineering Co., has wholly failed and refused to surrender and deliver up to the plaintiff said 1250 shares of the common capital stock of the said defendant, Climax Engineering Co., so issued to the said plaintiff as aforesaid on the 6th day of February, 1925 [1922], although often requested so to do; that said shares of stock are of great value; that each share of said stock is of the par value of $100.00 per share, and that each share of said stock is of a worth and value in excess of the par value of each share of said common capital stock.

"And the plaintiff avers that although often requested so to do, the said defendant, Climax Engineering Co., has wholly failed and refused to surrender and deliver up to the plaintiff said 1250 shares of the common capital stock of the said defendant, Climax Engineering Co., to the damage to the plaintiff in the sum of $200,000.00."

At the end of the plaintiff's case, defendant moved for a directed verdict, whereupon, the following occurred:

"The Court: The ruling on the motion is reserved at this time, with permission on the part of the defendant to renew the motion after they have offered evidence as to changes, if any, that have been had in the company during the three years as claimed by the plaintiff that he is entitled to recover damages for the value of the stock.

"Mr. Chamberlin: Do I understand the Court, that you want specific testimony now, or do you want the defendant's whole case?

"The Court: I just want it on this one question.

"Mr. Chamberlin: And you will not preclude us from offering our evidence on the whole case later, if necessary?

"The Court: No, if that doesn't finish the case we will proceed to try out the whole case. I just want your evidence on the proposition of what the legal effect would be, whether this is a different company, or different stock."

The defendant then introduced evidence as to the change in the corporate financial structure, including therein the proceedings before the board of directors and the meeting of stockholders in connection therewith. Thereafter the motion for directed verdict was renewed and by the court sustained.

Appellant argues here two matters, which he states as follows:

"1. The trial Court erred in dismissing the plaintiff's petition and in interpreting the contract to mean that the plaintiff was to be given a stock allotment of 1250 shares of the common stock of the company at the end of three years, and, as it existed at the beginning of the contract period, when, as a matter of fact, the contract itself provided that the plaintiff was to be given (Cravens to Dulany) 'a stock allotment of 1250 shares of the common stock of the company. The stock is to become my property at the end of three years if I am still with the company.' And further: (Dulany to Cravens) 'These certificates are to be held by me in trust for the company and are to become your property at the end of three years from February 1, 1922, in the event you are still with the company.' In other words, we contend that the Court erred in holding that the contract was for the delivery of shares of definite common stock, to-wit, the stock in existence at the time of the making of the contract of employment, and not the stock, whatever

its value, in existence at the end of the third year.

"2. The trial Court erred in refusing to hold the defendant liable in damages to the plaintiff where the defendant, by its own action, subsequent to the execution of the contract, disposed of all of the common stock in existence at the time of the making of the contract, in which case it should have delivered to the plaintiff 1,250 shares of any of its common stock in existence at the end of the third year or pay its equivalent in damages."

■ I. The gist of this first contention by appellant is that there was no agreement for delivery of definite common stock in existence at the time the contract was made, but for a delivery of 1,250 shares of the stock in existence at the end of the third year of service. This position is not tenable, either under the petition or under the contract itself. The above-quoted extracts from the petition seem to show that the cause of action is based upon the theory of a right to these particular shares of stock, which is directly opposed to the contention now made by appellant. The contract does not seem to be ambiguous. In regard to the stock, two provisions are prominent. The first of these is that 1,250 shares of common stock were to become the property of appellant when and only when he had served three years. The second was that during his entire service, and obviously irrespective of the extent of such service, he was to receive any dividends declared upon such stock. His contract was with the corporation, and the corporation was obligated concerning the stock. There is no way in which dividends can be paid upon stock unless it is issued, and this contract contemplated that dividends should be paid. Therefore it was necessary to a performance of the contract that the stock should be issued in advance of the termination of the three-year service. As such stock was not to become the property of appellant until the end of such service, it was clearly necessary that this issued stock should be held in some manner where it could be delivered to appellant if he served three years, or returned to the corporation if he failed in such service. The method of its holding is not set forth in the contract, but it was sufficiently and properly carried out in the way suggested in the above letter of February 6, 1922. Such method was clearly satisfactory to appellant, as he participated therein by indorsing and returning the stock certificates. That method covered an issue of the stock so that it might bear dividends, and, at the same time, placed it in custody or trusteeship so that it was secured for whomever might be entitled to it at the end of the three years. It is true, that this stock was not the property of the appellant prior to the termination of the three-year period, but it is also true that it was not the absolute property of the corporation. It was held for both parties. A statement in the above letter that it is held for the corporation obviously means no more than it was held for both parties, because the letter is clear that it is to be delivered to appellant if he should earn it under the contract. Therefore the court correctly construed the contract, just as the parties themselves construed it and as it must be construed, to be that these particular shares of stock were the ones intended by the parties to the contract, and no others.

■ II. This contention is that the cancellation of these particular shares of stock during the three-year period obligated appellee to deliver to plaintiff 1,250 shares of its new common stock which was in existence at the end of the third year, or to pay its equivalent in damages. The original contract does not provide for any substituted stock nor for any damages. It provided for the particular stock which was issued, and no other stock could be substituted therefor without a subsequent arrangement agreed to by both parties. Such being the condition, there could be no right in appellant to demand, as damages, the value of the substituted shares of stock at the end of the three-year period, or at all.

Appellant introduced evidence to the effect that, when the change in the corporation structure was imminent, Dulany promised him "that he would have 1,250 shares of the new stock issued in place of the old." If this occurred, and if Dulany had power to represent the corporation and bind it by such promise, the appellant would have a right of action based upon that arrangement. However, his suit is not so framed. His petition makes no mention of this subsequent agreement. That was brought into the case by the answer, as follows:

"For further answer, and by way of affirmative defense, the defendant states and shows the Court that the defendant is a Delaware corporation, and that at the time the contract of hire was entered into with the plaintiff, its capital stock consisted of five thousand (5,000) shares of preferred stock of the par value of $100.00 each, and ten thousand (10,000) shares of common stock without nominal or par value; that said com-

mon stock was what is known as bonus stock and never had any actual·value; that said common stock was authorized and provided as a means for the division of earnings and profits when and if earned; that said plaintiff well and truly knew the character and real value of said stock when he entered into the agreement for employment; that on or about the 1st day of May, 1923, the owners of all of said common stock, including the plaintiff, mutually agreed to cancel and surrender the same, and that pursuant to said agreement, all of said stock was so cancelled and surrendered."

The purpose and effect of such allegation in the answer was to show waiver or abandonment of this portion of the contract, which is the only portion here sued upon. Nowhere in any pleading is there a claim or suggestion that there was a new contract or a modification of the original contract.

There was no reply. In this state of the pleadings, appellant could not recover on this subsequent arrangement, for that was either a new contract or a vital variation in the original contract, upon which alone appellant claimed the right to recover. This variance is not immaterial, but goes to the very basis of this right to recover. It is fatal, and leaves appellant with no proof of right to recover under the contract sued upon, as he concedes that the stock originally issued was canceled with his consent. A case much in point is Fauble & Smith v. Davis, 48 Iowa, 462, where, in an action on a contract, proof was that a different performance was acquiesced in or caused by defendant, and such proof was held a fatal variance. Also see Walker & Davis v. Irwin, 94 Iowa, 448, 454, 62 N. W. 785; York v. Wallace, 48 Iowa, 305; Beebe v. Brown, 4 G. Greene (Iowa) 406; and, generally, 13 C. J. p. 750, § 911.

The trial court correctly directed a verdict, and its judgment thereon must be and is affirmed.