In re Estate of Sarah Willmott.

Lulu M. Kinart, Appellee, v. G. H. Willmott, Administrator, Appellant.

No. 40121.

April 14, 1930.

Rehearing Denied October 23, 1930.

*Tinley, Mitchell, Ross & Mitchell* and *J. G. Bardsley,* for appellant.

*Robertson & Robertson,* for appellee.

EVANS, J.—The claimant's mother was the daughter of John R. Willmott and Sarah Willmott, who lived for many years upon a farm near Neola. The plaintiff was born on May 10, 1906. The claimant's mother died in March, 1910. At and prior to the time of her death, she and her husband and children were living on the Willmott farm, and in occupancy of the dwelling house thereon, jointly with the grandparents. After the death of Mrs. Kinart, her surviving family continued to live with the grandparents until the spring of 1913, when the father moved to another farm. Shortly thereafter, the father remarried, and the claimant, Lulu, returned to the home of her grandparents. In the meantime, her grandfather, John R. Willmott, had died, in the latter part of the year 1913. From the time of her return, she made her home with her grandmother, up to the time of her death. The claimant pleaded that payment for her services was mutually intended by her grandmother and expected by herself. She also pleaded a definite promise to that effect made by her grandmother in her presence to her father on May 10, 1922,— this being the sixteenth birthday of the claimant. She and her grandmother lived alone, as members of a family. She attended school regularly, and received the same consideration from her grandmother as any daughter could reasonably expect from a mother. It is manifest that, at the beginning of this relation between them, the burden of responsibility of the grandmother created thereby was the heavier one. Manifestly, also, the burden would naturally shift, in the course of time, to the younger person. The grandmother was 84 years of age at the time of her death. Her death was not preceded by a long illness. She suffered a severe injury in an automobile accident, and survived the same only a few days. Prior to such accident, her strength and health were approximately normal for one of her years. Even so, she needed the companionship and the help of the grand-

daughter, whose service is not to be minimized. As to the money value of her services, the estimates of the witnesses and the findings of the jury were very liberal. She was a beneficiary as heir of the John R. and Sarah Willmott estate, and was fully protected therein by the will of John R. and by the intestacy of Sarah.

I. One of the issues submitted to the jury was whether the claimant was a member of the family of the decedent. It is one of the contentions of the appellant that the court should have instructed peremptorily that she was such member of the family. We are of opinion that the point is well taken. A contrary finding by the jury would be clearly against the evidence. Looking to the plaintiff's own evidence, no other inference can legitimately be drawn therefrom than that she was a member of her grandmother's family from the time of her return, after the death of her grandfather. We think, therefore, that the court should have instructed the jury to that effect. For the purpose of this appeal, however, this point is not very material. That is, it lost its materiality by other findings of the jury to the effect that there was an express promise of payment and a mutual intention and expectation of payment. The question, however, may become material on a new trial. For that reason alone we pass upon it now.

II. The father of the claimant testified to a conversation had with the grandmother in the presence of the claimant, wherein the grandmother promised to pay the claimant for her services if she would continue to live with her, and wherein the father agreed for the claimant that she would so continue, in consideration of payment. Such testimony was as follows:

"A. Yes, sir, she was there. Grandma Willmott told me, if I would leave Lulu stay there and take care of her, she would pay her well and good for it. She said she could not get along without her, and didn't want me to take her away. I said, 'That is pretty hard work for Lulu, to stay with you here all by herself.' She said: 'If you will promise never to take Lulu away from here, I will pay her well for everything that she does for me;' so I agreed to that. Q. Was there anything further said by you? A. I said, if she would pay Lulu for

it, she could stay. She said she would pay her good and well for anything she did for her, to take care of her. She said she would never want for anything after she was gone. She said, 'She will have this house and lot here to live in. That will be hers, and she will never want for anything.' She said, 'I will pay her well for it.' ''

The foregoing testimony was supplemented by that of the claimant herself, who, over appropriate objections, testified to the same conversation. Such testimony was, in part, as follows:

''Q. Now, you may tell this jury what that conversation was, between your father and grandmother, in which you said nothing, and in which you took no part, as you remember it. A. My grandmother told my father that day, if he would let me stay there and take care of her until the time she lived, I would be well paid for what I did for her, and I would never want for anything when she was gone.''

Appellant assigns error upon the admission of this evidence of the claimant. The question thus raised was involved and passed upon by us in *In re Estate of Runnells,* 203 Iowa 144. The question was fully discussed and considered in that case, and we need not repeat the discussion herein. In that case, the claimant's mother testified to a conversation with the deceased in the presence of the claimant. The claimant testified to the same conversation. She claimed to have taken no part therein. We held that the conversation of her mother in her behalf and in her presence, if effective at all, was effective as a personal transaction between the claimant and the deceased. Precisely the same situation is presented in the case at bar. The appellee seeks to differentiate the case at bar by the fact that the claimant herein was a minor, and that her father was her natural guardian, and that it was he, and not she, who was carrying on the conversation. The distinction is not pertinent. If it be thought that the father was entitled to the services of his minor child, yet he did not purport to contract in his own behalf, but in behalf of the claimant herself. The contract contended for was one between claimant and the decedent. The contract testified to by the father purported to be such. If the father was making the bargain for himself, he could not testify to it, nor could she bring suit thereon. Un-

der our statute, the contract of a minor is valid unless disaffirmed. The contract thus made was effective, if at all, in her behalf, and not in behalf of the father. The transaction thus 'had in her presence and with her acquiescence became a personal transaction between herself and the decedent. The point, therefore, is clearly ruled in the *Runnells* case, and we need not repeat the discussion contained in our opinion therein.

III. It appears from the claimant's own testimony that, during the period of service claimed for, the grandmother had been liberal towards her in the furnishing of funds. She paid  her at one time the sum of $1,000, and smaller sums at other times. She also allowed the claimant to draw many checks for her own use. These totaled several hundred dollars, in addition to the $1,000. The defendant contended that, if the grandmother should be deemed to have promised payment for the claimant's services, then the money actually paid by her to the claimant should be deemed credits upon her obligation, and not gratuities. He requested the court to instruct that such payments would be presumptively such, in the absence of evidence to the contrary. The proposed instruction in which this request was incorporated, was refused. Whether the refusal was justified because of the inclusion of other matters in the instruction, we need not consider. We think the defendant was entitled to an instruction substantially to that effect. The court did not give one. On the contrary, it gave the following, as the only instruction on the subject:

"14. The fact, if it be a fact, that Sarah Willmott gave to Lulu Kinart certain presents during the time in question herein, would not defeat claimant's right to recover pay for the services in question herein. The said Sarah Willmott would have the right to make presents to claimant in addition to her compensation for services, if she chose to do so."

We think the foregoing instruction was inadequate. It is a correct doctrine to say that payments of money made by a debtor to an existing creditor, or made by one who is under obligation to pay to the receiver thereof, will be deemed presumptively to apply as credits upon the obligation, and not as gratuities or gifts. This rule of presumption has special application and

special importance to a case against the estate of a decedent. The claimant's attitude towards the payments of money received by her from her grandmother is involved in inconsistency. If the grandmother had not put herself under legal obligation to pay the full value of the claimant's services, then these liberal payments of money could be deemed gifts of affection and gratitude. On the other hand, if by contract the grandmother had become the employer of the claimant, and had bound herself by obligation to pay her fully for her services, then she became debtor to the claimant as fast as such services accrued. If she actually made substantial payments from time to time, elementary justice requires presumptively that they be applied upon the debt. If the position of the claimant is sustainable at all, it would be equally sustainable if the payments had amounted to the full value of her services. If there was a definite understanding for full payment for the services, then these alleged gifts put the grandmother in the inconsistent attitude of making liberal gratuities, and yet neglecting to pay any part of her contractual obligation. Of course, this rule of presumption does not render it legally impossible for a debtor to make a money gift to his creditor. But the proof of such an anomaly involves a very substantial burden upon the donee-creditor. In this record we find nothing that can be said to rebut or to avoid the presumption here noted. In view of this fact, the presumption was controlling, and the court should have instructed the jury to allow the money payments as credits accordingly.

It is urged by appellee at this point that no counterclaim was pleaded. The defendant had no counterclaim. Such payments furnished no basis for a counterclaim. If the grandmother was legally indebted to the claimant, the money was properly received. If she was not legally indebted therefor, a completed gift was accomplished. On her own theory, the claimant was entitled to recover only such amount of her earnings as remained unpaid. Payments received constituted a part of her account.

We do not find it necessary to enter upon further details of the record. The defendant pleaded the statute of limitations as against an amendment, and the same was stricken by the court. The defendant assigns error on such ruling. We think the assignment of error lacks merit. Many errors are also assigned on various features of the instructions. We have read the instruc-

tions. They appear to have been carefully drawn. Except in the matters already noted, we find therein no proper ground of complaint.

The defendant pleaded a settlement, and predicated his pleading upon a written instrument set forth therein. Plaintiff's motion to strike was sustained, and complaint is made of such ruling. The writing set forth in the pleading was a mere schedule of household articles, which, by mutual understanding of all the heirs, were divided and allotted between them. The writing did not purport to settle any controversy, nor did it involve any controversy. Its subject-matter was wholly foreign to this controversy, and involved no reference thereto. It was, therefore, properly rejected.

Many errors are assigned also on the rulings on the admission of evidence. In the main, these questions are such as will not necessarily arise on a retrial, and we pass them without present consideration.

For the reasons indicated, the judgment below is reversed, and the cause remanded for a new trial.—*Reversed.*

MORLING, C. J., and FAVILLE, DE GRAFF, and KINDIG, JJ., concur.