ARTHUR J. HODGSON, Guardian, Appellee, v. GEORGE KEPPEL, Appellant.

No. 40430.

OCTOBER 21, 1930.

REHEARING DENIED JANUARY 16, 1931.

*Ralph B. Smith* and *Burrows & Burrows,* for appellant.

*J. O. Boyd, John P. Hornish,* and *John M. Strinic,* for appellee.

GRIMM, J.—On January 5, 1929, the plaintiff filed in the district court of Lee County, Iowa, a petition, verified by the plaintiff, in which he claimed of the defendant, George Keppel, $4,000, with interest from October 5, 1912, at 6 per cent per annum, payable annually, less $100 paid October 6, 1913, "for money had and received of plaintiff's ward's mother, Della L. Keppel; that the defendant, on or about October 5, 1912, orally promised Della L. Keppel he would repay her said sum, together with interest." To this petition the defendant filed a demurrer, interposing the statute of limitations. This demurrer was sustained.

On the 6th day of March, 1929, the plaintiff filed his first amended and substituted petition, verified by the plaintiff, in which he stated, among other things:

"That the defendant, George Keppel, received all of the

proceeds of said note ($4,000) and mortgage so executed by Della L. Keppel; that the said Della L. Keppel executed said note and mortgage at the instance and request of the defendant, George Keppel, and for his use and benefit; that, at the time, the defendant orally promised the said Della L. Keppel that he would pay said note on or before it matured, together with interest, as stated in said note.''

To this petition there was a demurrer filed, raising the issue of the statute of frauds.

On December 2, 1929, the defendant filed his second amended and substituted petition, properly verified by the plaintiff, in which he states, among other things:

''That, on or about October 5, 1912, the defendant, George Keppel, negotiated with one Edward Brown for a loan of $4,000, and for the loan of said $4,000 from said Edward Brown the defendant George Keppel promised to secure the same with a note of his sister, Della L. Keppel, secured by a mortgage * * * that the defendant, George Keppel, received all of the proceeds of said note and mortgage so executed at the instance and request of the defendant and for his use and benefit, * * * that the defendant, George Keppel, received all of the proceeds of said loan resulting from said negotiations and evidenced by said note and mortgage given said Edward Brown; and that the same was received under circumstances that would make it inequitable and contrary to good conscience and good morals for him to retain the same without repaying said note according to its terms and provisions; that, in pursuance of said implied contract to pay said note according to its terms and provisions, the said George Keppel did, on October 6, 1913, make one payment of $100 to said Edward Brown.''

To this second amended and substituted petition the defendant answered, setting up: First, a general denial; second, that, if there was any money paid either by Della Keppel or the mortgagee Brown, that the same was paid to said George Keppel in satisfaction of a debt owed by Della Keppel to George Keppel; third, that the cause was barred by the statute of limitations; fourth, that neither the defendant nor any person for him, lawfully authorized, ever signed any contract or agreement

whereby the defendant promised to pay the debt due Edward Brown from Della L. Keppel; fifth, the statute of frauds was pleaded. The cause was tried to a jury, and the jury returned a verdict against the defendant for the sum of $7,075.60. The note and mortgage were assigned by Brown, and the mortgage was foreclosed on Della's property, and a sheriff's deed was issued February 4, 1924.

I. The appellant sets forth twelve errors relied upon for reversal, including the claim that the court erred in not sustaining, the defendant's motion for a directed verdict in his behalf, on the ground that the statute of limitations had barred the claim. We will first consider this claim.

Della Keppel and George Keppel, the defendant (appellant) were sister and brother. The defendant claims that, on September 12, 1912, Della Keppel executed to the defendant, George Keppel, one promissory note for the sum of $4,000. This note, without any evidence of payment of any part of the principal or interest, was introduced in evidence by the defendant, after he identified the signature thereto as that of Della Keppel. This is not the note in controversy.

The principal evidence in this case on, behalf of the plaintiff was given by Edward Brown and B. F. Jones. We will consider the important parts of their evidence.

Brown was the man from whom the money was borrowed, and to whom the note and mortgage to secure the payment thereof were executed by Della Keppel. He testified, among other things:

"In October, 1912, George Keppel talked to me about a loan of $4,000. They wanted the loan, and they were going to put up a mortgage on some property on North Twelfth Street, to secure the loan. The title was in Della Keppel. He wanted this money for the purpose of going to school, if I recollect right. I made the loan. I closed this loan in Mr. Jones's office, and I got a note secured by a mortgage on the Twelfth Street property signed by Della Keppel, and the mortgage and note were received by me in accordance with the negotiations I had with George Keppel, to the best of my recollection. * * * I paid all

checks to George, except two, and the two first checks were handed to Della Keppel the date of the deal in Mr. Jones's office, * * * and Della endorsed them and handed them to George.''

It appears that only $1,500 of the $4,000 was paid the day the papers were made, and Brown gave Della notes for the balance. Brown further testified that:

''At the time I negotiated this loan, as I remember it, they didn't care about having the money all at once. They wanted it at different times, and I think this would account for the different dates of payment. There was one interest payment, or part of an interest payment, made on this $4,000 note by George Keppel.''

The indorsement of this payment on the original note was in the handwriting of the witness Brown.

On cross-examination, Brown testified, among other things, as follows:

''I think George Keppel came to my farm near Warsaw to talk about this loan, and we finally agreed to make it.

''Q. Now you say that George said something about wanting to go to school? A. Yes, sir. Q. And you were loaning George the money, were you? A. George was getting the loan for his sister. To my best recollection, the note and mortgage were made by Della Keppel. I was looking to whoever signed that note and mortgage for the payment of it. Mr. Jones prepared the papers for me, and Della Keppel was present in Mr. Jones's office, and the deal was completed in Mr. Jones's office. On the day the papers were signed, I made out checks to Della Keppel for the sum of $1,500, and I think I gave Della Keppel a note.''

On redirect examination he said:

''There can be no mistake that these checks were paid to George Keppel. The first two checks were turned over to George by Della, but they were made payable to Della, and the other checks were handed to George.''

Apparently all of the $4,000 passed to George Keppel. The

witness Jones was a lawyer in Keokuk. He seems to have kept a diary, and testified from memory, refreshed by his diary, among other things, as follows:

"They [Della and George] came up, on the day that I drew the papers, and George Keppel talked considerable. He was handling the negotiations in regard to the loan. I prepared a note and mortgage and also an affidavit, and examined the abstract. Della Keppel signed the note and mortgage. She was the owner. This was on the 5th day of October, 1912. I had George Keppel, Albert Keppel, Cornelius Keppel, and Nancy Keppel to sign the affidavit. The papers were executed and some checks given by Mr. Brown in my office on the 5th day of October, 1912. * * * George Keppel said he wanted the proceeds of this loan to go to school, and Della was going to loan it to him, and he was going to pay it back. * * * Della Keppel was in my office at the time I prepared the note and mortgage, and they talked about this loan. She signed it and I took her acknowledgment the 5th day of October, 1912, and I remember Della Keppel said to let George have the money, and George did most of the talking."

The foregoing constitutes substantially all the important evidence in the case. It appears without dispute that Della Keppel was born July 18, 1894, and was buried on February 10, 1914. She married after the papers were executed, and at the time of her death, she was the wife of Anthony Elias. Plaintiff's ward, John Elias, is a son born to that union, and an only child. At the time of the trial, the 3d day of December, 1929, this boy was 15 years of age. He must have been born very shortly before the death of his mother, Della Keppel Elias.

It will be noted that Della Keppel Elias died about a year and four months after the execution of the note and mortgage in question.

The five-year period of limitations on the oral agreement expired October 5, 1917. This suit was not begun until January 5, 1929, or approximately 12 years thereafter. It is the claim of the plaintiff that the promise of the defendant, George Keppel, was to pay the note which Della Keppel gave Ed Brown on October 5, 1912, in accordance with its terms. This note did not mature until after the death of Della Keppel. The plaintiff

claims that, as to the two-thirds interest of the child of the said Della Keppel, the statute of limitations will not run until one year after he attains his majority, and that, therefore, the statute of limitations has not run. Parenthetically, it should be stated the record shows that there was no administration on the estate of Della Keppel. There is an assignment of the interest of the husband of Della Keppel of his one-third interest, but it is conceded that that portion of the claim is barred.

Manifestly, unless the proof is sufficient and satisfactory that George Keppel, either by express or implied contract, agreed to pay the note given by Della Keppel to Brown, in accordance with its terms, then this claim is barred by the statute of limitations. The burden, of course, as to the aforesaid averments of the petition in avoidance of the statute of limitations, remained upon the plaintiff. As was said by this court in *Richardson v. Hoyt,* 60 Iowa 68:

"An implied contract, as well as an expressed contract, should be established by proof, to authorize recovery thereon, and the burden of the proof rests upon the plaintiff."

It is the contention of the plaintiff that the note evidenced the primary obligation of the defendant, George Keppel. On the other hand, the evidence shows that the primary indebtedness of George Keppel was to his sister, and that the note and mortgage executed by Della were given to Brown so that she could borrow the money and then loan it to George. A very careful reading of the entire record does not disclose any promise whatever on the part of George to pay his indebtedness to Della, in accordance with the terms of Della's note to Brown. The mere fact that Brown made an indorsement on the note to the effect that he had received $100 from George Keppel in payment of interest, the indorsement being in Brown's own handwriting, is not material. It cannot be considered as evidence of a promise on the part of George to pay his indebtedness to Della in accordance with the terms of the note. For all that appears, he may have tendered this $100 to Della as part payment of his obligation to her, and she may have told him to take it to Brown and have it indorsed on the note as part payment of the interest. This is just as consistent as the theory of the plaintiff that the payment is evidence that George had agreed to pay the indebtedness to

Della in accordance with the terms of the note. There is no showing how or why he paid this money to Brown.

If we disregard entirely the showing made by the defendant in this record that Della owed him a large amount of money at the time this transaction took place, as evidenced by another note for $4,000 hereinbefore referred to, it clearly appears, from the entire record, that George was borrowing money from Della. His obligation to pay was to pay Della. Nowhere does it appear that he promised to make this payment at any definite time. There can be no reasonable inference from the entire record that he promised to make this payment at any definite time, or that he promised to make payment at the expiration of five years, as specified in the note. From the record, then, there being a debt due, and no time fixed for its payment, under the authorities it became due on demand, and even in the absence of a demand, the statute began to run forthwith. *Hall v. Letts,* 21 Iowa 596; *Mereness v. First Nat. Bank of Charles City,* 112 Iowa 11; *Widner v. Wilcox,* 131 Iowa 223; *Citizens Bank of Pleasantville v. Taylor,* 201 Iowa 499.

The statute having begun to run during the lifetime of Della, it continued to operate against her minor heirs. In *Grether v. Clark,* 75 Iowa 383, this court said:

"As the statute began to run during the life of the one in whose favor the right originally accrued, its operation was

not suspended by his death; but, as against his representatives, to whom the right descended, it continued to run. The fact that some of them are minors does not affect the result."

See, also, *Warner v. Hamill,* 134 Iowa 279.

It clearly appears from the evidence of Brown and Jones that Della was borrowing the money from Brown. Brown was looking to Della, not to George, for the payment of the note and

mortgage. The exact language of the evidence is: "I was looking to whoever signed that note and mortgage for the payment of it." Jones says: "George Keppel said he wanted the proceeds of this loan to go to school, and Della was going to loan it to him, and he was going to pay

it back." Pay it back to whom? Necessarily, to the party from whom he borrowed it,—his sister Della.

If this record clearly shows anything, we have, according to the undisputed evidence in the case, an express oral agreement on the part of George to pay Della. There is nothing contained in it to show, nor can there be any inference from this evidence, that George agreed to pay Della in accordance with the terms of the note. Upon no other hypothesis than that George agreed to make payment in accordance with the terms of the note, can the plaintiff avoid the effect of the statute of limitations. Moreover, there cannot be both an express and an implied contract. Where there is an express contract, there can be no implied contract. *Duncan v. Gray,* 108 Iowa 599.

Moreover, this suit, as it was finally tried on the second amended and substituted petition, is based on an implied contract; while the evidence clearly shows, if it shows anything, that the agreement of George to pay Della was express, and not implied.

There is here no evidence that the minds of the parties met on the implied contract for which the plaintiff contends, to wit: That George was to pay this indebtedness in accordance with the terms of Della's note to Brown. As was said in *Thompson Yards v. Haakinson & Beaty Co.,* 209 Iowa 985:

"To the existence of an implied contract there must be a meeting of the minds,—[to the] agreement."

Is there here any evidence whatever of the meeting of the minds of the parties that either George should pay the note to Brown at the time fixed in the note or that George should pay Della the indebtedness he owed her in accordance with the terms of the note,—that is to say, five years from its date? We think not. The evidence of Jones is directly to the contrary, "George Keppel said he wanted the proceeds of this loan to go to school, and Della was going to loan it to him, and he was going to pay it back." Pay it back to whom? Manifestly, to the party to whom he owed it,—his sister Della. There is here no expression even indicating that he was to pay it back in accordance with the terms of the note.

The evidence is not in dispute on that subject. There was

804

nothing to submit to a jury. It was a question of law for the court.

On the whole record, we are constrained to hold that the plaintiff has failed in successfully carrying the burden of his case in avoidance of the statute of limitations, and the court erred in not directing a verdict for the defendant on that ground. It therefore follows. that the case must be, and is,—*Reversed*.

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.