BLANCHE FAYE RAPP, Appellee, v. JAMES BIRD LOSEE, Executor,
et al., Appellants.

No. 41568.

NOVEMBER 22, 1932.

H. J. Fitzgerald, for appellants.

R. W. Zastrow, for intervener, appellant.

Thonn & Wardwell and Thomas & Loth, for appellee.

 EVANS, J.—The plaintiff was the only daughter of the decedent, John K. Losee, and the defendant is the executor of his will. At the time of the transaction under consideration Losee was the owner of two farms of 160 acres each, and known in the family as the "east farm" and the "home farm." The former is the one in controversy. The evidence of the alleged gift begins with December, 1921. The Losee family consisted of the husband and wife and a son and daughter. The plaintiff was married in 1921 at the age of 24, and occupied the east farm as a renter for the year 1921. She was in such possession at the time of an alleged conversation between her parents had in December, 1921. In July, 1921, the mother had become afflicted with a cancer. In October following, she submitted to an operation therefor. The result of the operation was not hopeful. During her illness, her daughter divided her time between her own home and that of her mother. The two homes were not far apart. The claim of the plaintiff is that in December, 1921, the wife expressed to her husband a wish that the east farm be given to the daughter in consideration of her long service in the family; that in such conversation it was agreed between husband and wife that the gift of the farm should be made as suggested by the mother, subject, however, to the right of the parents to have the rents thereon during the life of both of them; that shortly thereafter such a deed was executed and was placed by the father among his papers in the bank where it remained for several years; that the purported reason of the father for withholding the deed from record was the protection of the life interest; that the plaintiff and her husband continued their occupancy of the farm from year to year, paying the rents therefor to the father; that the plaintiff and her husband made substantial improvements upon the farm at their own expense to the amount of several hundred dollars; that the mother died in 1923; that the plaintiff's husband died in 1925;

that the plaintiff continued on the farm until October, 1926, when she took up her home in town and her father lived with her there. On or before the year 1929 the father professed displeasure over the approaching marriage of the plaintiff to a second husband. In that year he made his last will. In this will he purported to revoke a former will. In such will he recited the fact also that he had previously executed to the plaintiff a deed of the farm, which deed he then and there purported to repudiate. In such repudiation he asserted that the deed had not been delivered. The record is quite replete with evidence of disinterested witnesses to whom the decedent had stated that he had given that farm to his daughter, and that it belonged to her. Such is the general nature of the evidence. Some of it is challenged by the appellants as being inadmissible under the inhibition of Section 11257 of the Code. The rest of it is challenged as to its sufficiency to show a complete delivery of the gift.

I. The plaintiff was permitted to testify over the objections of the defendant to the alleged conversation between her father and mother in her presence, in December, 1921. The first complaint of the appellant is directed to the admissibility of such evidence. We set forth sufficient thereof to indicate its character:

"Well, my mother said, 'Well, John, you know I am very sick, and there is no chance of me ever getting well, and I have had something on my mind for a long time that I want to talk over with you.' And he said, 'What is that?' And Mother said, 'You know that when we came up here we didn't have hardly anything in 1901, and you know that ever since Faye was seven years old she has helped with the work on the farm and about the house, and has been with us all the time and helped us all she could, and done her work, as well as mine, and helped us to have this property which we now have, and I feel she should have something for the work she has done, and I want her to have the east farm, the Lilly farm, for her own farm. What do you think of that?' And Father answered, 'Well, I think that is right; she has earned it.' And then Mother said, 'Yes, it has not only come from our work, but I have taken the money I received from my folks, about $2200, and paid off the ditch tax and debts on that farm, and I want her to have it, as she and I have both helped you to get what you have got, and it is no more than right that she should have something for what she has done.' Well, then Mother said, 'How are we going to give it to her? Shall we give her a deed now?' And Father said: 'I

think we should have the rent off from that farm as long as you and I are alive; but I tell you what I will do—we will make a deed of it to her and put it in escrow in the First National Bank of Northwood, and when we are dead she can go and get the deed and have it recorded.' Father said, 'We are giving her the farm now, and if she wants any improvements on it she will have to help us put them on and pay for them out of her own money. ' Mother said, 'I think she should have something to show that the farm is hers.' Then Father said, 'Do you know where the abstract is?' And Mother answered, 'Yes;' and Father said, 'Well, you had better get that abstract and give it to her, so that she will have that to show.' "

It appeared upon the cross-examination that the abstract of title of the farm was delivered to the plaintiff by her mother pursuant to the suggestions of the father. Was the foregoing testimony of the plaintiff admissible? That is to say, was she competent to testify thereto under the statute? The substance of appellant's objection thereto is that it amounted to a contractual transaction between the plaintiff and her parents and that for that reason she was not competent to testify thereto. We think the witness was competent to testify to a conversation between her parents in which she took no part. The evidence was admissible to show the communication between the father and mother and for no other purpose. Feltes v. Tobin, 187 Iowa 11; Hughes v. Silvers, 169 Iowa 366; Powers v. Crandall, 136 Iowa 659; Secor v. Siver, 188 Iowa 1126.

The evidence was not admissible for the purpose of establishing *contract* with the plaintiff. A conversation had in the presence of the plaintiff which would amount to a contract with the plaintiff, either express or implied, would be deemed a personal transaction, In re Estate of Runnells, 203 Iowa 144. The result here is that the plaintiff may not rely upon this conversation had in her presence as establishing a contract, yet she may testify to the conversation as a mere communication between her parents and as a circumstance indicating the state of mind of her parents at that time.

II. We proceed to a consideration of the sufficiency of the evidence as a whole to sustain the holding of the trial court. The point emphasized by the appellants is that the deed executed by the parents was never in fact delivered. Concededly no manual delivery of the deed was made. It is also urged that there was no possession taken of the land itself. The plaintiff was in possession as a tenant

at the time of the conversation of the parents. She continued upon the premises for five years thereafter. Her original lease was oral and for one year only. Nor was there any subsequent lease made except an oral understanding whereby she continued from year to year. The fact that her father was entitled to the rents and that she paid him the rents annually, put her in the attitude of a tenant. The fact that she and her husband made valuable improvements and made the same with the knowledge of the father and at their own expense, put her in the attitude of a donee or perhaps a prospective donee. As will later appear herein the payment of rent to her father was consistent with the conditions of the gift. If she were to be deemed a tenant by sufferance from year to year, she would naturally expect her landlord to pay for reasonable improvements. A tenancy from year to year furnishes of itself no motive to the tenant to expend money in permanent improvements. The plaintiff and her husband erected a windmill at an expense of $140. They dug a new well. They put a new roof upon the garage. They installed a manure carrier in the barn. They planted an orchard, which could not come into bearing for several years. They built new fences in substantial amount. They built a cattle shed. They purported to do these things in their own interest, and the father knew it. Their conduct in this respect was consistent with her claim of ownership under the gift. Their possession was sufficient as tending to show delivery of the subject matter, provided the intent to make the gift was otherwise proved.

We turn to the evidence of intent on the part of the father. Paragraph 9 of the last will of the decedent was as follows:

"NINTH. I hereby declare and state that heretofore a will has been made by me, which will has been lost or misplaced and I hereby specifically revoke said will; and I hereby further state and declare that I have heretofore made and executed to my said daughter, Blanche Faye Festl, a deed purporting to convey to her the following described real estate to wit: The West One-Half of the Southeast Quarter of Section Thirty, and the West One-Half of the Northeast Quarter of Section Thirty-one, all in Township One Hundred North, of Range Nineteen, West of the Fifth Principal Meridian, Worth County, Iowa, and that said deed was by me placed with said will which is now lost, and I hereby declare and state that said deed, to my said daughter, has never been delivered in

any manner or form and that the same is void and of no effect and I hereby revoke and renounce the same."

This is quite conclusive evidence that a deed was made pursuant to the conversation of December, 1921. There could have been no purpose to make the deed unless the intent to deliver it had existed. In any event the deed was made. The last will discloses also that a prior will had been made. The record indicates that this will was made in 1927. The decedent purported in his last will to repudiate both the deed and the will of 1927. For a period of eight years, therefore, the deed had been preserved and held to await the final summons pursuant to the treaty between husband and wife in 1921. The witness Lund was a banker at whose bank the deed was kept, although Lund had never seen it. At some time after December, 1921, the decedent went to Lund and counseled with him concerning the making of a will. Lund testified:

" 'With respect to this east farm, he said he had given it to Faye, his daughter, and he said there was a deed to her of it in the bank among his papers—and he said that Faye was to have this deed upon his death.' * * *. He also said the rents were to go to him during his lifetime and that was the reason the deed was not recorded."

On another occasion he borrowed money from Lund's bank and made a property statement to the bank. Concerning that occasion Lund testified:

" 'He said the east farm had been given to Faye, and that it was her farm.' * * * 'He simply said that the east farm belonged to Faye; that they had given it to Faye, but the deed had not been recorded because he was to have the rent and income from the farm during his life, and that the deed was there in the bank, among his papers, to be turned over to Faye after his death.' "

The witness Kapka testified to a conversation with the decedent had in 1928 as follows:

"Mr. John K. Losee made a statement to me that he had three farms near Northwood, one was called Faye's farm, another he said was to be Reuben's farm and the other was one that the mortgage was on. He said he had made a deed to it at one time but that afterwards he got mad and burned it up. Well, he said that what-

ever happened or didn't happen, that farm was to be Faye's free and clear of encumbrance, if any."

The witness Anderson testified that the plaintiff purchased from him the windmill and that her father was present when she did it. He also testified that she alone paid for it. The foregoing is perhaps a sufficient statement of the evidence. There can be no doubt thereunder that the decedent and his dying wife executed the deed for the purpose of conveying title to the plaintiff subject to life use by the grantor. There can be no doubt but that the decedent persisted in that purpose for many years and preserved the deed accordingly. The circumstances here indicated were symbols of delivery. Not only so, but the improvements which the decedent permitted the plaintiff to make at her own expense created a substantial equity. The decedent knew that she was making the expenditures and knew that she was making them in the belief that the farm was hers subject only to the life use of the parents. The improvements literally belonged to her. They had become part of the realty by the mutual action or acquiescence of both father and daughter. He had no right, legal or moral, to take to himself the benefit of an expenditure so induced.

At the time of the making of these expenditures the deed to plaintiff was in existence and in apparent escrow, and the abstract of title was in her possession, having been given to her professedly as a *token* of the title itself. In short the record as a whole is very persuasive to our minds in support of the decree of the trial court.

III. The defendant pleaded an estoppel and an adjudication. The facts averred and relied on are that the plaintiff filed an unsuccessful contest against the probate of the will of her father. The will was admitted to probate. It is contended therefore by the defendant that this was an adjudication of the plaintiff's rights and estopped her from setting up her present claim. The contention is clearly untenable. There was no inconsistency between the attitude of the plaintiff in her contest and her attitude in the present action. She was an heir of her father. If he had died intestate she would have taken her share of the estate by inheritance. The rights she might thus acquire would involve no inconsistency with her claim of title in the present case. The will thus contested purported to give her a life estate in 120 acres of the farm in controversy. It devised the remainder to collateral relatives. It also devised a large amount of real estate to a sister and to a brother of the testator's

(the executor herein). In short the provisions of the will furnished an adequate motive to the plaintiff to contest the same notwithstanding her claim of ownership of the east farm. The adjudication as such admitting the will to probate had no effect whatever upon the issues herein.

IV. A purported petition of intervention was filed herein by the purported intervener. Its petition discloses that it holds a mortgage, on certain land, acquired by the decedent in 1927. In the deed of conveyance to the decedent the mortgage of the intervener was assumed by the decedent. The intervener filed its claim against the estate as a claim of the third class. Such is its status. Its petition prays that the rights of the plaintiff be made subject to the rights of the intervener. The intervener's mortgage does not cover the land involved herein. So far as this land is concerned, the intervener is merely a general creditor of the estate. It is necessarily represented in the defense of this suit by the executor, and represented in the same manner and to the same extent as all other creditors. It is interested in the defense made by the executor in precisely the same manner as all other creditors are. It has no independent standing whereby it may obtain affirmative relief in its own behalf. The issues in this case must be deemed those made by the answer of the defendant and not such as are made by the petition of the intervener. These observations have very little importance upon this record. We make them only to clarify the record itself and to indicate why no further attention is given to the petition of intervention.

The decree entered below is—Affirmed.

DE GRAFF, KINDIG, BLISS, and CLAUSSEN, JJ., concur.