MARIE MAASDAM, Appellee, v. ESTATE OF JACOB MAASDAM, Appellant.

No. 46874.

SEPTEMBER 17, 1946.

Ralph H. Munro, of Fairfield, for appellant.

Jones & White, of Ottumwa, for appellee.

BLISS, J.—Jacob Maasdam, seventy-three, died July 30, 1944, survived by his widow, Anne W., fifty-six; William K. Maasdam, fifty-four, a stepson; Marie E., forty-eight, the claimant; Elizabeth L., forty-six, a daughter; and Fred Dennison Maasdam, forty-three, a son. His first wife, Catherine, the mother of all of said children, died on October 17, 1931. William K. Maasdam was the son of Catherine by her first marriage. The son's last name was Fuller, which by court action was changed to Maasdam. He was about five years old when his mother married Maasdam.

On June 22, 1936, Jacob Maasdam took Anne W., a widow, of Burlington, Iowa, as his second wife. On April 13, 1935, he executed his last will. In it he provided that the executor should first pay out of the estate all of his just debts. Respecting William K. Maasdam, the will stated that he had made cash advancements to him sufficient to fully cover his share in his present estate and more, "yet I shall allow him $5.00, but to his daughters, Catherine, I give $250 in cash and to Catheline I also give $250 in cash." These amounts were to be paid when they (twins) reached the age of twenty-five years, provided there were sufficient funds in the estate after paying all debts. To his children, Marie, Elizabeth, and Fred he gave the remainder of his property in equal shares.

The will was probated and the son, Fred Dennison Maasdam, nominated as executor in the will, was appointed and qualified as such. He filed an inventory naming the widow and the beneficiaries under the will. It recited that an antenuptial agreement existing between the deceased and the surviving widow, "precludes her from all rights, or interest in and to the Jacob G. Maasdam estate as heir." It listed the real estate as a farm of 84.41 acres, of an estimated value of $200 an acre, or $16,882, subject to a mortgage of $3,989.49. It stated that there were no cash, stocks, bonds, notes, or

mortgages. The only personal property listed were a harrow, a disc, a mower, a harness, a wagon, a manure spreader, and hand tools, all of an estimated value of $200; ten tons of hay, $60; eight bushels of clover seed, $144. The total estimated value of the entire estate was $17,286.

The debts listed were the farm mortgage of $3,989.49, two notes of deceased held by the Iowa State Bank and Trust Company of Fairfield, Iowa, for $915 and $300, and other debts, including $268.80 for medical services, estimated at $615.76. The debts altogether totaled $5,820.25. The estimated net value of the inventoried estate was $11,465.75.

Sometime after the death of the testator, and apparently about October 1, 1944, Anne W. Maasdam, the surviving widow, filed her claim against the estate for $12,924.40, based, in part, on three promissory notes of the deceased. These notes, with interest computed to October 1, 1944, amounted to $3,023.08, $2,111.81, and $5,552.08. The statutory attorney's fee taxed on each note was, respectively, $70.23, $61.18, and $95.52. The balance of her claim was based upon the antenuptial agreement. By its terms her husband was to pay her $150 on or before the first day of January of each year of their married life, and if she survived him he was to provide a home for her as long as she remained his widow. He failed to pay her the yearly allowance during his life and for this she claimed $1,460.50 as of October 1, 1944, and in settlement of his failure to provide a home for her after his death she claimed the sum of $550. After a jury was drawn for the trial of her claim on November 21, 1944, the parties and their counsel agreed upon the claim in the sum of $12,924.40, and it was so established by the court.

It was not until January 17, 1945, that the claimant, Marie Maasdam, filed her claim against the estate. Inasmuch as the parties are in dispute as to whether the claim, as filed, states an express contract or an implied contract or a situation permitting claimant to sue on quantum meruit, we set out the words and figures thereof, to wit:

"Plaintiff claims of said estate the sum of Thirteen Thousand Nine Hundred and Forty and no/100 Dollars with interest as allowed by law on account of services rendered de-

ceased at his request and with his promise to pay therefor as follows, to-wit:

Feb. 17, 1917 to Feby. 17, 1927, ten years @
    $8.00 per week ............................$ 4,160.00
Feb. 17, 1927 to Oct. 17, 1931, 4 years and 8 months
    during mother's illness @ $15.00 per week.... 3,600.00
Oct. 17, 1931 to Jan. 1st, 1942, 540 weeks @
    $8.00 .................................... 4,320.00
Jan. 1st, 1942 to July 30th, 1944, less six weeks
    from June 15th, 1942 to Aug. 1, 1942, 124
    weeks @ $15.00 ......................... 1,860.00

[Duly verified.]        Total........$13,940.00''

Fred Kann, as temporary administrator for the estate to defend against the claim, for special defenses against it, pleaded and stated:

"1. That each and all of the several items of the claim * * * were barred by the general statute of limitations, Code Section 11007.

"2. That each and all of the several items have been fully paid and satisfied by the decedent during his lifetime."

The appellant relies upon six errors for reversal, in substance, as follows:

1. The court erred in permitting the claimant to testify that on her twenty-first birthday she heard her father say: "Well, he said that he too had thought about that, and said by all means that I should be paid for my services if I remained on." To which the appellant objected that the witness was incompetent under section 11257 of the 1939 Code (section 622.4, Code, 1946).

2. The court erred in overruling the same objection to Will Maasdam's testimony relative to the same transaction.

3. The court erred in overruling the same objection to Elizabeth Maasdam's testimony relative to the same transaction.

4. The court erred in overruling the same objection to

Fred Dennison Maasdam's testimony relative to the same transaction.

5. The court erred in overruling appellant's motion for a directed verdict at the close of the evidence because the claimant was bound by her own testimony that she took no part in necessary transactions and conversations, without which she could not have had an express contract as alleged in her claim as filed. And because, having alleged an express promise to pay, she could not then submit her cause to a jury on an implied promise to pay.

6. The court erred in overruling the defendant's exceptions to instructions, particularly Nos. 3 and 4, upon the theory of an implied contract.

Appellant contends that appellee's cause of action is based upon an express contract the terms of which she failed to prove, while the appellee contends that she seeks recovery on the theory of quantum meruit based upon facts and circumstances establishing the performance of services for the deceased and his family, for which deceased expressly stated the claimant would be compensated, and which the law implies would be the fair and reasonable value of the services.

In addition to the special defenses pleaded by the estate, there was also the statutory denial of the claim. There was no special defense by the estate that the services were gratuitously rendered by the claimant as a member of her father's family, so that many of the matters involved in an action where the services are rendered by a member of the family to the family are not involved.

In the brief point or proposition in Division I of appellant's argument it is stated:

"The rule is that a claimant seeking to recover against an administrator for work or services performed for the deceased is an incompetent witness to testify to the service performed, or to any fact which tends to establish an express or implied contract between himself and the deceased."

In support of this proposition the appellant cites the following authorities: In re Estate of Kahl, 210 Iowa 903, 911, 232 N. W. 133; Ballinger v. Connable, 100 Iowa 121, 129,

130, 69 N. W. 438; Peck v. McKean, 45 Iowa 18; Smith v. Johnson, 45 Iowa 308; Cowan v. Musgrave, 73 Iowa 384, 386, 35 N. W. 496; Herring v. Estate of Herring, 94 Iowa 56, 59, 62 N. W. 666; Sheldon v. Thornburg, 153 Iowa 622, 627, 133 N. W. 1076; In re Estate of Runnells, 203 Iowa 144, 152, 153, 212 N. W. 327; In re Estate of Willmott, 211 Iowa 34, 37, 38, 230 N. W. 330, 71 A. L. R. 1018; In re Estate of Docius, 215 Iowa 1193–1195, 247 N. W. 796.

The claimant in leading up to the challenged question had testified about the family life at the farm home, a mile south of Fairfield, to which the family, consisting of her parents, Will, Elizabeth, Fred, and herself, had moved in 1911, when she was sixteen years old; how she and Elizabeth had finished eighth grade and Elizabeth had gone on to high school and she had stayed at home. She further testified:

"My birthday is February 17th and I was 21 years of age February 17th, 1917. We were fond of birthday dinners and we usually have birthday dinners for everybody. At that time of course I was getting older and we needed help in the home and so mother spoke up and said she thought I should be paid for my services if I remained on and she needed help and she couldn't do her own work—Mr. Munro: Objected to as the witness is incompetent under [section] 11257 of the Code. The Court: Objection sustained."

In the absence of the jury, counsel and the court discussed some legal questions, and the jury was again called into the jury box.

"Q. Was any reply made to that statement by your father in your presence? A. Yes there was. Q. *Now, I will ask whether or not there was talk back and forth between your father and your mother and the others present?* A. Yes there was. Q. Who all was present? A. Elizabeth and Fred and Will and Will's wife, a sort of family gathering. Q. In this conversation relative to your staying there did you take any part or did you say anything? A. No, I didn't. Q. All right. What did your father say in response to your mother's statement, in substance? Mr. Munro: Objected to as incompetent and

the witness incompetent under section 11257 of the Code. The Court: Overruled. A. Well, he said that he too had thought about that, and said by all means that I should be paid for my services if I remained on. Mr. Munro: I move to strike the answer for the same reason. The Court: Overruled. Q. *Was there anything said by the other people present other than yourself?* A. *Yes, there was. They all agreed to it, that if I remain, that I should receive compensation for it."* (Italics supplied.)

I. On the issue of the competency of the claimant to testify to what her father said at her twenty-first birthday-anniversary dinner respecting the arrangement for her future services in the home, and on the issue of whether claimant has made a case, the parties place much reliance upon the nature of that arrangement.

Appellant contends that appellee in the statement of her claim pleaded an express contract and sought recovery thereon of specific weekly wages expressly promised by the deceased. If the record supports that contention, then the appellee failed to establish her claim because there is no evidence that the deceased ever promised or agreed to pay her any such wages. It is a well-recognized rule of practice that a party must establish his case as pleaded. One seeking to recover solely on an express contract specific as to all of its terms cannot recover on an implied contract or upon a quantum meruit or vice versa. To do so would permit a fatal variance. Duncan v. Gray, 108 Iowa 599–601, 79 N. W. 362; Walker v. Irwin, 94 Iowa 448, 454, 62 N. W. 785; Wernli v. Collins, 87 Iowa 548, 551, 54 N. W. 365; Hunt v. Tuttle, 125 Iowa 676–678, 101 N. W. 543; Lines v. Lines, 54 Iowa 600–602, 7 N. W. 87; Beebe v. Brown, 4 (G. Greene) Iowa 406–408; Eyser v. Weissgerber, 2 Iowa 463, 482, 483; In re Estate of Oldfield, 158 Iowa 98–100, 138 N. W. 846; In re Estate of Oldfield, 175 Iowa 118, 121, 122, 156 N. W. 977, L. R. A. 1916D, 1260, Ann. Cas. 1917D, 1067; Sammon v. Roach, 211 Iowa 1104–1107, 235 N. W. 78; Bierkamp v. Beuthien, 173 Iowa 436, 438, 155 N. W. 819; Cammack & Son v. Weimer, 181 Iowa 1, 6–8, 162 N. W. 586; Russell v. Clemens & Co., 196 Iowa 1121–1123, 195 N. W. 1009; In re Estate of Hill,

230 Iowa 189, 195–197, 297 N. W. 278; Feltes v. Tobin, 187 Iowa 11, 13, 14, 171 N. W. 739. One may, of course, plead these causes of action in separate counts. Russell v. Clemens & Co., supra, 196 Iowa 1121, 1122, 195 N. W. 1009.

We may concede to appellant that the claim, on its face, has the appearance of an express contract to pay a fixed weekly wage, and that there could be no variance between the claim and evidence of a specific wage. But under the liberal rules of this court with respect to the statement of claims and pleading in probate proceedings it is our conclusion that the claim as stated should be considered as the statement or the pleading of a claim for recovery on quantum meruit of the fair and reasonable value of any services proved. This court has long recognized that technical nicety and strictness of pleading and strict conformity of proof to allegations are not required in probate proceedings. Shoberg v. Rock, 230 Iowa 832, 837, 298 N. W. 834; In re Estate of McKeon, 227 Iowa 1050, 1061, 289 N. W. 915; Soppe v. Soppe, 232 Iowa 1293, 1297, 8 N. W. 2d 243; In re Estate of Carpenter, 232 Iowa 919, 929, 5 N. W. 2d 175; In re Estate of Stratman, 231 Iowa 480, 487, 1 N. W. 2d 636; In re Estate of Onstot, 224 Iowa 520, 522, 277 N. W. 563; Wilson v. Else, 204 Iowa 857, 862, 216 N. W. 33; Chariton Nat. Bk. v. Whicher, 163 Iowa 571, 579, 145 N. W. 299; Newell v. Estate of Newell, 198 Iowa 710, 712, 200 N. W. 238; In re Estate of Newson, 206 Iowa 514, 523, 524, 219 N. W. 305; 'Harrison v. Harrison, 124 Iowa 525, 528, 100 N. W. 344.

The claimant prosecuted her claim and sought to recover on quantum meruit, that is, she asked that her claim be established in the amount of the fair and reasonable value of her services, or, as the Latin phrase expresses it, for as much as she has merited or deserved. The evidence of the amount of recovery which she introduced was in conformity to that theory. The court thus submitted the case to the jury. If she made an arrangement with her father for her services for an indefinite period, during which the nature and value thereof might greatly vary, it is not likely that a definite wage was agreed upon for each week during the period or that they anticipated and fixed the weekly value of her services for

nursing in 1930 or 1944. The weekly amounts stated in the claim will be considered as her estimate of the reasonable value thereof.

But the fact that she sued upon a quantum meruit does not avoid or lessen the burden and necessity of meeting the demands of section 11257 of the Code of 1939. That section makes no distinction between proving an express contract or an implied contract or a claim recoverable on quantum meruit. See Hayes v. Snader, 182 Iowa 443, 446, 165 N. W. 1041. In seeking to prove any such arrangement the section must not be violated. At common law quantum meruit was one of the common counts embraced in general assumpsit. The courts have quite uniformly held that the action of general assumpsit or any count thereunder, such as quantum meruit, requires a contract, express or implied, to support it. As stated in 7 C. J. S. 111, section 4:

"While originally the action of assumpsit was limited in its scope to true contracts, a true contract, in the sense that the parties have entered into an actual agreement, is not now considered essential, as the courts have extended the remedy to include cases where the obligation arises not out of contract, but from the application of equitable principles to the circumstances. In such a case the obligation and the fictitious promise out of which it, in theory, springs are imposed by the law without reference to the intentions of the parties and often against their expressed intentions, for the purpose of allowing the remedy by action of assumpsit."

See, also, an excellent discussion in Woods v. Ayres, 39 Mich. 345, 33 Am. Rep. 396, and Hertzog v. Hertzog, 29 Pa. 465. As an illustration of quantum meruit, Bouvier's Law Dictionary states:

"When a person employs another to do work for him, without any agreement as to his compensation, the law implies a promise from the employer to the workman that he will pay him for his services as much as he may deserve or merit."

That is the law as this court has announced it at different times. In Hall v. Luckman, 133 Iowa 518, 521, 110 N. W. 916, 917, it said:

"It has frequently been held that, even where an express contract or an express request for the performance of service is established, but the evidence fails to show an agreement as to the price or wage to be paid, a recovery may be had for the reasonable value." Citing Allison v. Parkinson, 108 Iowa 154, 156, 157, 78 N. W. 845.

In re Estate of Hill, supra, 230 Iowa 189, 198–201, 297 N. W. 278, 283, the court said:

"There was sufficient evidence of an express contract with Mrs. Graves and the reasonable value of her services performed to take the case to the jury. The failure to fix the amount of the compensation in the express contracts did not invalidate them and recovery may be had on an implied contract to pay the reasonable value of the services."

See, also, Scott v. Wilson, 185 Iowa 464, 468, 170 N. W. 761; Rogers v. Millard, 44 Iowa 466, 467; Wence v. Wykoff, 52 Iowa 644–646, 3 N. W. 685; Baker v. Oughton, 130 Iowa 35, 37, 106 N. W. 272. In some of these cases the agreement is spoken of as an express contract and in some as an implied contract. There cannot, of course, be an express contract and an implied contract relating to the same subject matter and covering all of its terms. In such case the express contract would supersede the implied contract. But there may be an implied contract on a point not covered by an express contract. Hawn v. Malone, 188 Iowa 439, 444, 176 N. W. 393. See, also, Hodgson v. Keppel, 211 Iowa 795, 801–803, 232 N. W. 725; City of Pella v. Fowler, 215 Iowa 90, 96, 244 N. W. 734.

There is testimony in the record before us that at the very inception of the arrangement between claimant and her father, at the birthday dinner, the father said to her in substance that if she would stay in the home and work as she had before she was twenty-one he would pay her for her services, and "she said she would." Will Maasdam so testified

herein. This was a verbal proposal and a verbal acceptance. There is testimony of a like proposal and acceptance after the mother's funeral and just before the second marriage. All the family witnesses agree that, in addition to these verbal agreements, the proposal by the father was made and the claimant signified her acceptance by her conduct, by remaining in the home and performing the services. There was no term of this contract between them left for implication except the amount of the compensation. He promised to pay her if she would stay home and work and she accepted both verbally and by conduct. Their minds met on every factor of the contract except what compensation she was to receive, and the law determined that. This was not a case where the minds of the parties met on no term of the contract. An instance illustrating such a case is where a person injured and unconscious from a brain concussion is brought into a hospital, maybe remaining in that condition for days, and receives hospitalization and the care of physicians and surgeons. There is, of course, no meeting of minds on anything. The injured person's obligation for the services is fixed by the application of equitable principles. That is not the situation in the case before us. Neither did the claimant spontaneously, voluntarily, and of her own initiative alone begin and continue the performance of services which were knowingly accepted by her father and his family, and an obligation to pay was thereby incurred. But the contract was brought into existence upon the suggestion of the mother and one or more of the children that if Marie remained in the home and worked she should be paid. The father agreed to the proposition and Marie by words and conduct said she would accept. This was a binding agreement, and it is immaterial whether it be called an express contract or an implied contract or a combination of both. It was on this theory and on the basis of this agreement that claimant tried her case.

As said in In re Estate of Newson, supra, 206 Iowa 514, 518, 219 N. W. 305, 307:

"It is agreement to, and mutual understanding of, the existence of an obligation assumed by one of the parties to the other, that * * * is the essential element of a contract.

Usually agreement is arrived at by means of a proposal or offer, express or implied, from one side, expressly or impliedly accepted on the other. But formality in proposing and accepting is not required. * * * The existence of the mutual understanding, the proposal and acceptance, may be implied from conduct and circumstances. These may be shown by circumstantial evidence * * * Acceptance may be shown by conduct or by performance communicated to the promisor."

There is no difference in the binding force of an express contract and a contract implied in fact. The essential elements of each are the same. A meeting of the minds is just as essential to the existence of one as to the other. Each must be established by proof or admissions for a recovery. See Thompson Yards v. Haakinson & Beaty Co., 209 Iowa 985, 989, 229 N. W. 266; Hodgson v. Keppel, supra, 211 Iowa 795, 803, 232 N. W. 725; Bruggeman v. Independent Sch. Dist., 227 Iowa 661, 665, 289 N. W. 5; Johnson County Sav. Bk. v. Creston, 212 Iowa 929, 934, 231 N. W. 705, 84 A. L. R. 926; In re Estate of Unangst, 213 Iowa 1064, 1070, 240 N. W. 618; Snell v. Kresge Co., 223 Iowa 911, 913, 274 N. W. 35. City of Pella v. Fowler, supra, 215 Iowa 90, 97, 244 N. W. 734, 737, states that:

"A contract implied in fact is to every intent and purpose an agreement between the parties. They do not arise out of an implied legal duty or obligation but out of facts from which consent may be inferred."

This court has repeatedly said that the difference or distinction between an express contract and one implied in fact is in the method of proof. Carlson v. City of Marshalltown, 212 Iowa 373, 236 N. W. 421; and see, also, Thompson Yards v. Haakinson; City of Pella v. Fowler; In re Estate of Unangst; Bruggeman v. Independent Sch. Dist., all immediately supra. In Fouke & Lyon v. Jackson County, 84 Iowa 616, 620, 51 N. W. 71, 73, the court said:

"A contract is express when the parties show their assent in words; it is implied when they show it by acts."

In Carlson v. City of Marshalltown, supra, 212 Iowa 373, 377, 236 N. W. 421, 423, the court said:

"In the case of an express contract the evidence shows an express proposal or promise and acceptance. In that of an implied contract it shows the proposal or promise and acceptance by implication."

The last three statements are not in accord with several of our decisions which hold that express contracts may be proven by inferences from facts and circumstances, as well as by direct evidence. In In re Estate of Oldfield, supra, 158 Iowa 98, 100, 138 N. W. 846, 847, we said:

"Direct evidence of such an agreement for employment is not necessary, however. If from all the facts and circumstances appearing in the case it can fairly be said that there must have been such an agreement, it is sufficient."

This statement was quoted with approval and followed in In re Estate of Hill, supra, 230 Iowa 189, 200, 201, 297 N. W. 278. See, also, the following decisions wherein it was held that express contracts or essential elements therein were established by inferences from facts and circumstances: In re Estate of McKeon, supra, 227 Iowa 1050, 1055, 1056, 289 N. W. 915; Leland v. Johnson, 227 Iowa 520, 531, 288 N. W. 595; Kladivo v. Melberg, 210 Iowa 306, 313, 227 N. W. 833; Finnerty v. Shade, 210 Iowa 1338, 1347 et seq., 228 N. W. 886; In re Estate of Kleinhesselink, 230 Iowa 1090, 300 N. W. 315.

We call specific attention to what the court has said about the similarity and close relationship between express contracts and contracts implied in fact because of the insistence of appellant that claimant was an incompetent witness as to what her father said at the birthday dinner, under the holding in the cases of In re Estate of Runnells, supra, 203 Iowa 144, 152, 153, 212 N. W. 327, and In re Estate of Willmott, supra, 211 Iowa 34, 37, 38, 230 N. W. 330, 71 A. L. R. 1018, each written by Justice Evans. The appellee seeks to distinguish these decisions because she contends they involved express contracts.

In the Runnells case the claimant sought to establish a claim, in probate, against her deceased aunt's estate, that the latter had promised her a 120-acre farm if she would

accompany her aunt to Florida on a pleasure trip at the expense of the aunt. She pleaded her claim in two counts: quantum meruit and express contract. She withdrew the quantum meruit count. As the opinion states, that count was without merit and its withdrawal was well advised. Certainly, a pleasure trip to Florida in the winter, at no expense, hardly merited or deserved a farm as compensation for the alleged service. To sustain the express contract the claimant testified that in a conversation between her mother and her aunt (the mother's sister), at which she was present but in which she took no part, her aunt told her mother that if she would let the claimant go to Florida with the aunt, for such trip and for past trips of like nature the aunt promised claimant the farm when she was through with it, and her mother said she would give her consent to claimant to make the trip. The mother gave similar testimony. There was also evidence by other witnesses of corroborative declarations by the aunt. This court held that the conversation between the mother and the aunt obviously would not have effected a valid contract between the aunt and the claimant had the latter not been present, and that if, by her presence, even though she took no part in the conversation, such a valid contract was effected, then the transaction must have been a personal one between claimant and the deceased aunt, concerning which the claimant would be incompetent to testify as a witness.

In re Estate of Willmott, supra, 211 Iowa 34, 36–38, 230 N. W. 330, 331, 71 A. L. R. 1018, is substantially identical with the one before us for determination. In that case claimant filed her claim against the estate of her grandmother for domestic services rendered the latter during the last five years of her life. She asked for no specific amount and made no claim that any specific sum was promised. Her claim was based upon quantum meruit and recovery was sought on that theory, exactly as was done in this case. This court reversed a judgment on a jury's verdict for $6,025. In that case the grandmother sought the services of the claimant, not on her twenty-first birthday anniversary, but on her sixteenth natal anniversary. The opinion states:

"The father of the claimant testified to a conversation

had with the grandmother in the presence of the claimant, wherein the grandmother promised to pay the claimant for her services if she would continue to live with her, and wherein the father agreed for the claimant that she would so continue, in consideration of payment. Such testimony was as follows: 'A. Yes, sir, she was there. Grandma Willmott told me, if I would leave Lulu stay there and take care of her, she would pay her well and good for it. * * * She said: "If you will promise never to take Lulu away from here, I will pay her well for everything she does for me;" so I agreed to that.'* * *

"The foregoing testimony was supplemented by that of the claimant herself, who, over appropriate objections, testified to the same conversation. * * * Appellant assigns error upon the admission of this evidence of the claimant. The question thus raised was involved and passed upon by us in In re Estate of Runnells, 203 Iowa 144. The question was fully discussed and considered in that case, and we need not repeat the discussion herein. In that case, the claimant's mother testified to a conversation with the deceased in the presence of the claimant. The claimant testified to the same conversation. She claimed to have taken no part therein. We held that the conversation of her mother in her behalf and in her presence, if effective at all, was effective as a personal transaction between the claimant and the deceased. Precisely the same situation is presented in the case at bar. * * * The transaction thus had in her presence and with her acquiescence became a personal transaction between herself and the decedent. The point, therefore, is clearly ruled in the Runnells case, and we need not repeat the discussion contained in our opinion therein."

The appellee has made little attempt to distinguish her case from either of the cited cases. No material or reasonable distinction can be made. The material facts are in substance the same. This is particularly true as to the Willmott case and the one at bar. In the Runnells case the mother spoke for the claimant. In the Willmott case it was the father. In this case the mother and the other children spoke for the claimant. They said that if she remained at home and worked the father should pay her. He said that if she remained and worked he

*would* pay her. What he said was spoken to all of them, including the claimant. No one would seriously contend that he excluded or intended to exclude her from his response. Speaking of all who were there, and what, if anything, was said by them after her father had said that, "I should be paid for my services if I remained on," she testified: "Yes, there was. They all agreed to it, that if I remain, that I should receive compensation for it." She said she would remain on and work, according to the testimony of her brother Will. What she testified her father said was a proposal to her. It was an offer and a promise to her. It was a personal communication of her father to her and a personal transaction. Even more definitely than in the Willmott case. She was incompetent under section 11257. She testified that she took no part in the conversation preliminary to her father's proposal. She never testified that she did not accept it. But whether she accepted vocally or not she did evidence her acceptance by her conduct promptly. The birthday dinner was on February 17, 1917. Her filed claim states it is for services "as follows: Feb. 17, 1917 to * * *."

The appellee had a definite purpose in view in having all of the living participants in the birthday dinner as witnesses except Will's wife. She may not have been available. It was to establish the inception of the arrangement for the future services of the claimant and the contract therefor. It was the purpose to show the meeting of the minds of the claimant and her father on the proposition: his proposal to pay her wages for her services and her consent to work and acceptance of his proposal. Claimant was incompetent under section 11257, Code of 1939, to testify to any participation with deceased which tended to establish either an express or an implied contract between herself and the deceased. Griffith v. Portlock, 233 Iowa 492, 495, 7 N. W. 2d 199, and cases cited; Sheldon v. Thornburg, supra, 153 Iowa 622, 627, 133 N. W. 1076; In re Estate of Kahl, supra, 210 Iowa 903, 911, 232 N. W. 133; In re Estate of Docius, supra, 215 Iowa 1193, 1194, 247 N. W. 796; Worthington v. Diffenbach, 184 Iowa 577, 579, 168 N. W. 257.

The decisions in the Runnells and Willmott cases clearly

rule our decision on the competency of the claimant under section 11257, Code of 1939, with respect to the challenged testimony, and we hold that she was an incompetent witness and the court was in error in not sustaining the objection of appellant.

Appellee contends that this court's ruling admitting the testimony of the claimant that she overheard her parents express their intention to give her a farm, in Rapp v. Losee, 215 Iowa 356, 358, 359, 245 N. W. 317, sustains the trial court. That opinion was also written by Justice Evans, who distinguishes it from the holding of the Runnells case as being inadmissible for the purpose of establishing a contract but as admissible as a circumstance indicating the state of mind of her parents as to a matter to be consummated in the future. This decision does not aid the appellee.

II. The second error assigned was based upon the court's ruling that Will Maasdam, who took part in the conversation at the birthday dinner, was not incompetent under said section 11257 to testify to what the decedent said at that time. It appears under the record that he was not an heir of the decedent and that he received a legacy of but $5 under the will of decedent. It is our conclusion that this bequest was so nominal and incidental as to indicate that he was without such interest in the event of the proceeding as would bar him as incompetent under the statute and was therefore competent to testify. See Erwin v. Fillenwarth, 160 Iowa 210, 218, 137 N. W. 502 and Ivers v. Ivers, 61 Iowa 721, 723, 17 N. W. 149.

III. With respect to the third and fourth errors assigned, the record is that neither Fred nor Elizabeth took any part in the said conversation complained of and they were not incompetent under said section 11257.

Since it is our conclusion that the claimant was incompetent under said section, and the ruling of the court permitting her to testify as above set forth was prejudicial error requiring reversal, we do not find it necessary to pass upon the other assigned errors.

The judgment appealed from is reversed.—Reversed.

All JUSTICES concur.